## No. 13,811.

STATE OF LOUISIANA VS. MORGAN'S LOUISIANA AND TEXAS RAILROAD AND STEAMSHIP COMPANY.

106 513
109 67

### SYLLABUS.

1. A lease by one railroad company of the tangible property of another does not, of necessity, involve the franchises, or corporate existence, of the lessor; and a judgment against the lessee, in a suit to which the lessor is not a party, with respect to the lessee's use, under its charter, of the leased property, is not conclusive as to rights of the lessor which are not included in the lease.

2. There is nothing in the charter of the defendant company (Act No. 37 of 1877, Regular Session) that authorizes said company to carry on the business of public warehouseman, whether under said charter, or under Act No. 156 of 1888, or otherwise, or that authorizes it to carry on such business as incidental to the business of a railroad operated by any other person or corporation than itself.

APPEAL from the Civil District Court, Parish of Orleans.-- Theard, J.

Walter Guion, Attorney General, (E. Howard McCaleb, of Counsel), for Plaintiff, Appellee.

Denegre, Blair & Denegre, for Defendant, Appellant.

The opinion of the court was delivered by

MONROE, J.   This suit may be regarded as the sequel to that entitled "State vs. Southern Pacific Co.," 52 Ann. 1822.   In the latter case, it was charged by the State that the defendant, the Southern Pacific Company, was unlawfully exercising the franchise of "public warehouseman" in New Orleans, and the subject of the suit was to restrain it from so doing.   The following excerpts from the statement and opinion of the court, as therein made and rendered, will serve to make clear the condition of affairs upon which the present action is predicated, to-wit:

This court, speaking through the Chief Justice, in stating the case, said: "After pleading the general issue, it (the Southern Pacific Co.) admitted and averred that, for nearly ten years past, it had been storing, for hire, in warehouses belonging to the Morgan's Louisiana and

Texas Railroad and Steamship Company, a corporation created by special act of the Legislature of this State, being Act No. 37 of the Acts of 1877, by arrangement with the owner thereof, goods and merchandise, transported, or to be transported, over the lines of railroad and steamships of said company, consisting almost entirely of sugar and rice, and, during said period, had been issuing warehouse receipts, such as were authorized by Act No. 156 of the General Assembly of this State" (of the Session of 1888), with the conditions and requirements of which the defendant has fully complied; and it further averred that said business was not *ultra vires*, or contrary to the policy of the State, or the interests of the public; that it afforded much needed facilities to the patrons of the railroad, and was a necessary and proper incident to the business of said railroad, in which it was engaged. "That, whilst it believed that its action in the premises had been entirely *intra vires*, nevertheless, in view of the contention made by the State in this suit, it had concluded to withdraw from said business, referred to by the State as that of "public warehouseman," and to surrender and return to said owner the possession of said warehouse; and it had done so, and had transferred its unfinished business to the said Morgan's Louisiana and Texas Railroad and Steamship Co." Proceeding with the statement, the court said: No notice seems to have been taken of the averment, in the answer, that defendant had withdrawn from the business of warehouseman, and had surrendered and returned to Morgan's Louisiana and Texas Railroad and Steamship Company (the owner thereof) the possession of the warehouses, and had transferred it's unfinished business to said corporation; but the case went to trial, resulting in a judgment in favor of the defendant, dismissing plaintiff's demand, with costs. The State has appealed. Plaintiff's prayer was based upon allegations that the Southern Pacific Company, a foreign corporation, chartered and organized under the laws of the State of Kentucky, carrying on a business and maintaining a public office in this State, and in the City of New Orleans, had intruded into, and was unlawfully holding and exercising, the public franchise of carrying on and transacting the business of a public warehouseman in the City of New Orleans and State of Louisiana. That the Southern Pacific Company was then, and had been for more than a year, daily, and continuously, soliciting and receiving property for storage in its warehouses, for hire and reward, * * * issuing, over the signature of its authorized agents, public warehouse receipts there-

for, to the order of different persons entitled thereto, which said receipts purport to be issued by defendant as a public warehouseman; * * *. That it had been receiving goods, wares, merchandise and agricultural products in the warehouses, leased and kept by it in the City of New Orleans, from day to day, during the past year, charging storage therefor, and delivering the property received, and, in general, carrying on and conducting the business known as public warehouseman; * * * that said acts and doings of said defendants * * * were illegal and contrary to petitioner's public policy, * * * were not authorized by its (defendant's) charter, and were wholly *ultra vires*, * * * and were contrary to, and violative of, the Constitution of this State, which provides that no corporation shall engage in any business other than that expressed in its charter, or incidental thereto; * * * and the acts and doings of said defendant were highly injurious and detrimental to petitioner's interest and the interest of her citizens, licensed and authorized by her laws to carry on business as public warehouseman in the City of New Orleans and State of Louisiana."

In the opinion, it was said, among other things:

"Had the defendant been organized in Louisiana, under a charter precisely similar to that under which it was incorporated in the State of Kentucky, it would not have been entitled to carry on, here, as a corporation, the business of warehousing, as a substantive, independent business. The charter of the company did not entitle it to pursue such business in Kentucky. * * * The evidence shows that the defendant company is operating, in Louisiana, a connected line of railroad, under leases obtained from several railroad corporations. We do not think its right to do this is an issue in this case, under the pleadings. * * * We are of opinion that the defendant company is not authorized to receive, as being for purposes incidental to its business as a railroad or common carrier, a license under Act 156 of 1888. The license granted thereunder contemplates a permanence of the storage of articles received which is inconsistent with the legitimate and regular business of a railroad corporation. * * * The rights, duties, and obligations of a common carrier and warehouseman are separate and distinct. Railroad companies are common carriers, whilst warehousemen are depositaries for hire or reward. We are of opinion that the defendant company is not authorized to receive, for storage, for hire, in warehouses, goods, or produce, which have not been received by it under

and from shipments by its road, or for shipments upon its road. We think it authorized to receive them for storage in warehouses, under and from shipments upon its road, and for shipments by its road, to the extent that such storage is in fulfillment of its obligations as a common carrier, and not otherwise, and no longer. We do not consider that storage of such goods and merchandise by defendant, in warehouses, for hire, is incidental to its business as a railroad corporation and common carrier, when the storage is made under, either an express or implied, special, or general, agreement with shippers, and consignees, either before or at the time of shipment, or on receipt of goods, that they should be received and held for storage, for hire, either for a fixed time or at the will of the shippers or consignees. * * * We think that the storage of goods by a railroad in its warehouses, as a matter incidental to its business as such, contemplates and looks to a rotation of storage as immediate and prompt as the railroad corporation can make it. * * * To be incidental business the storage must be preliminary, either, to immediate transportation, or immediate removal. (Hutchinson on Carriers, Sections 62, 63, 88, 89, 97, 351, 352, 356, 369, 378; Chicago and Rhode Island Railroad vs. Warren, 16 Ill. 502.) * * * We do not think we are called on, here, to attempt to define the particular time and circumstances under which the relations of shippers and consignees of goods by a railroad, * * * as a common carrier, shift to those of bailors and bailees (State *ex rel.* Violet vs. Johnston, 46 Ann. 85); it suffices to recognize the fact that there may be such shifting, and, when it occurs, the storage of goods in the warehouses of the corporation, for any length of time, becomes a distinct, substantive, business, and cannot be carried on as being incidental to the franchise of a railroad corporation. That the defendant has carried on such substantive business in the past, we think shown by the evidence, * * * the State has the undoubted right to prevent its continuance."

And there was judgment as follows, to-wit:

"For the reasons assigned, it is hereby ordered, adjudged and decreed, that the judgment of the District Court be * * * reversed, and it is now ordered, adjudged and decreed, that the defendant corporation be, and hereby, enjoined and restrained from taking out a license as a public warehouseman, under Act No. 156 of 1886 (1888) "and from carrying on business as a public warehouseman for hire. It is further ordered, adjudged and decreed, that the defendant company be, and it

is hereby, enjoined and restrained from carrying on, or pursuing, the business of warehousing, for hire, as a substantive business, and that it be restricted in its storage of goods in warehouses to storage by it, in fulfillment, alone, of its obligations as a common carrier."

Two of the members of the court, whilst giving assent to the principle on which the decision of the majority rested, withheld concurrence, on the ground that it should have distinctly affirmed, instead of leaving it to inference, that nothing therein contained was intended to deny defendant corporation the right to charge a reasonable compensation, or demurrage, for freight received by it, in its capacity as common carrier, for transportation over its lines, and which could not be immediately shipped to its destination, or for freight received by transportation over its lines, which could not be immediately delivered to the consignee. And they expressed the opinion that such right undoubtedly exists, as incidental to the business of common carrier, though freight cannot be so held and charged for beyond a reasonable time.

Upon the application for rehearing, the following was concurred in by all the members of this court, viz:

"It was not thought by the majority of the court that any serious doubt would arise as to the right of the defendant to charge and recover compensation for storage, in its own warehouses, of goods left on its hands by reason of the failure of the consignee to remove the same promptly, or for the enforced storage of property handled by it in its capacity as a common carrier; but, as there appears to be some uncertainty as to the interpretation of which the opinion and decree, heretofore handed down and entered, are properly susceptible, and as that uncertainty is shared by our brethren, who withhold their concurrence upon that account, we think it advisable to say, that it is not the meaning or intent of the judgment, as rendered, to deny the right of defendant to charge and recover compensation under the circumstances as hereinbefore stated, and that the difference of opinion between the members of the court was, not as to whether such right exists, for we are all agreed that it does, but as to whether the fact of its existence was sufficiently recognized in the opinion and decree. With this explanation, the application for rehearing is refused."

Thereafter, the State brought the suit which is now before the court, and alleges, in substantially the same language as that used in the suit against the Southern Pacific Company, that Morgan's Louisiana

and Texas Railroad and Steamship Company (which for convenience will be designated as the "Morgan Company") is carrying on the business of a public warehouseman, issuing warehouse receipts, etc. The petition herein filed then recites the fact and the terms of the judgment rendered in the former suit, and alleges that said judgment is final and executory. It further recites the language of the answer filed in said suit, to the effect that the defendant had concluded to withdraw from the warehouse business and had surrendered and returned the warehouses used by it to the Morgan Company, and had transferred to said company its current warehouse business, and alleges that no agreement has ever been entered into whereby the Southern Pacific Company has surrendered said warehouses or transferred said business, and that if any such agreement and surrender were made, the same were simulations, devised for the purpose of evading the effect of the judgment which the two corporations believed would be rendered against such Southern Pacific Company. It further alleges that, since the alleged withdrawal of the Southern Pacific Company, the business which it was prohibited from carrying on has been continuously conducted by said Morgan Company, as the representative, and for the account, of said Southern Pacific Company.

It is further alleged that, if the petitioner be mistaken in these allegations, and if the Morgan Company is not carrying on said business for account of the Southern Pacific Company, nevertheless, the judgment rendered against the latter company is binding on the former; and the Morgan Company, by reason of its relation with the Southern Pacific Company, and the privity existing between them, is concluded by said judgment, and that its carrying on business, in violation thereof, is in contempt of the authority of this court.

It is further alleged that, if neither of these positions be maintained, and it should be held that said Morgan Company is not carrying on said business as the representative of said Southern Pacific Company, and is not concluded by the judgment against the latter, nevertheless, that said Morgan Company is without authority to carry on said business, for the reason that it claims to have leased to said Southern Pacific Company its railroad in this State, together with all its steamships, depot buildings, wharves, and all other property connected with, and appurtenant, thereto, and that; "if said contract * * * be a lease, about which petitioner expresses no opinion, and if such, it be not binding on petitioner to the extent of not denying to

it the right of suing to forfeit the charter of said Morgan's Louisiana and Texas Railroad and Steamship Company, by reason of its having made and entered into a contract with the Southern Pacific Company not authorized by its charter and wholly *ultra vires,* in regard to which petitioner reserves all of its rights, and especially the right to sue, hereafter, for such forfeiture of charter, should it be deemed advisable and proper to do so (?), nevertheless, the said Morgan's Louisiana and Texas Railroad and Steamship Company, as between it and the Southern Pacific Company, occupies, toward the latter, the position of having leased to it all the rights and privileges granted to Morgan's Louisiana and Texas Railroad and Steamship Company, in its charter, to carry on, conduct, and operate, a railroad in the State of Louisiana, and that, therefore, having abandoned and divested itself of the privilege and right to carry on, conduct and operate, a railroad in this State, it had abandoned, surrendered, and divested itself of any rights, if any it has, under its charter, which, however, is denied, to carry on and conduct the business of a public warehouseman, or to operate, conduct, or carry on, the business of storing goods, wares and merchandise, of any kind, at all, in any capacity."

It is further alleged that the defendant, upon May 24th, 1900, applied for, and obtained, a license to carry on the business of public warehouseman, under Act No. 156 of 1888, but that it is without authority, under its charter, to carry on said business, and is prohibited, by the Constitution, from engaging in any business other than that expressed in said charter, or incidental thereto. There is a prayer for a preliminary injunction, restraining the defendant from carrying on the business of public warehouseman; from receiving and storing goods and merchandise, or agricultural products, whether for pay or otherwise; from issuing warehouse receipts; from leasing or purchasing any building to be used as a public warehouse, or for storing goods, merchandise or agricultural products, whether for pay or otherwise; and from selling, or otherwise conveying, any franchise to store goods that it may claim to possess, whether as a public warehouseman or otherwise. And the petition concludes with a prayer for judgment maintaining such injunction and decreeing that the defendant is carrying on the business of a public warehouseman for account of the Southern Pacific Company, that, for that, or other reasons, stated, it is prohibited from so doing, and is concluded by the judgment heretofore rendered against said company, and is in contempt

thereof, and that, under no circumstances, is said defendant entitled to make use of the franchise of a public warehouseman, or to receive or store, for hire, or otherwise, whether as a public warehouseman or in any other capacity, any goods, wares, or agricultural products.

The application for the preliminary injunction was refused by the judge *a quo,* upon the face of the papers, and the State, thereupon, applied to this court for a writ of *mandamus* to compel its issuance, with the result, that the trial judge was directed to hear the application upon a rule *nisi.* State *ex rel.* Attorney General vs. Judge, 104 La. 110. The attempt to obtain a preliminary injunction seems, however, to have been, eventually, abandoned, and the defendant filed an answer, to the following effect, to-wit:

It avers that it was incorporated by Act No. 37, of 1877, and main-tains its offices in the City of New Orleans, and that said act of incor-poration constitutes a contract between it and the State, which is protected by the constitution of the United States, and that its rights, under said contract, constitutes property, the divesture of which is prohibited by the same authority; and it claims the protection of paragraph 1, Section 10, and of Section 1, Amendment 14, of said Constitution, as against any adverse construction of Act No. 156, of 1888, or of either of the Constitutions which have been adopted by this State. It further avers that its said charter authorizes it to exercise all the franchises and to carry on all the business which it is charged with exercising and carrying on, and this, whether separately from its railroad business, or otherwise. It especially denies the alle-gation of the petition to the effect that there was no surrender of defendant's warehouses by the Southern Pacific Company and no transfer of the warehouse business, and allege that it obtained the license contemplated by Act No. 156 of 1888, and resumed control of said warehouse in May, 1899, and, thereafter, conducted business therein, in good faith, and solely for its own account. And it further denies that, in so doing, it violated, or was guilty of contempt of the judgment rendered against the Southern Pacific Company, in a suit to which the defendant was not a party, and which was predicated upon the charter incapacity of the corporation against which it was rendered.

Thereafter, a supplemental petition was filed on behalf of the State, in which it is alleged, that, if the defendant's legislative charter confers upon it the right to engage in the warehouse business,

except as incidental to its business as a common carrier, the same is unconstitutional, for the reason that no such object is expressed in the title. And the parties, thereupon, went to trial upon the merits, with the result, that there was judgment for the plaintiff, in the following terms, to-wit:

"* * * Enjoining and restraining said defendant from carrying on business as a public warehouseman, for hire, and of availing itself of the provisions of Act 156, of 1888, and further enjoining said defendant from pursuing the business of warehousing for hire, as a substantive business, and restricting it, in its storage of goods in warehouses, to storage by" (in) "fulfillment, alone, of obligations incurred by it in due course of business, as a common carrier, etc." From this judgment, the defendant has appealed, and the plaintiff answers the appeal, and prays that said judgment be made to conform to the prayer of its petition.

The following are the facts of the case, as they appear from the record, to-wit:

The "Morgan's Louisiana and Texas Railroad and Steamship Company," which, as heretofore, will be designated as the "Morgan Company," was incorporated by an act of the General Assembly of this State, No. 37, of 1877. By the terms of the act, the corporation was granted perpetual succession, and such powers were conferred as appeared to be necessary for the accomplishment of the purposes declared in the title, which, together with certain provisions concerning the maintenance and conduct of warehouses, will be more particularly referred to in the opinion which follows.

The capital stock was fixed at $5,000,000, divided into fifty thousand shares of $100 each, and the company was authorized to increase the same to $15,000,000 and, some years later, availed itself of that privilege. At the original organization, the whole amount of capital called for by the charter was furnished by Charles Morgan, but fifty shares of the stock were issued to five other gentlemen, in lots of ten shares each, and they gave their notes, either to Morgan or to the company, each, for $1000, and those notes, together with the certificates which had been issued to the makers, remained in the possession of the company from the time the notes were given, and the certificates were returned to it, save perhaps in one or two instances, where other persons have been substituted as shareholders, until within the last few years, when they were sent to the assistant secretary of the

company, who is also an officer of the Southern Pacific Company and has his office in New York. In 1883, there was established, by the Legislature of Kentucky, a corporation called the "Southern Pacific Company," to which was also granted perpetual succession, and which was authorized, among other things (quoting the language), "to contract for, and acquire by purchase, or otherwise, bonds, stocks, obligations and securities, of any corporation, company, or association, now existing, or hereafter formed, or constituted, and bonds, obligations and securities, of any individual, State, territory, government, or local authority, whatever, and to enter into contracts with any corporation, company, or association, individuals, State, territory, government, or local authority, in respect of their bonds, stocks, obligations and securities, or in respect of the construction, establishment, acquisition, owning, equipment, leasing, maintenance, or operation, of any railroads, telegraphs, or steamship lines, or any public, or private, improvements, or appurtenances thereof, in any State, or territory of the United States, or in any foreign country, and to buy, hold, sell, and deal in, all kinds of public, and private, stocks, bonds, and securities," etc.

The corporation thus established, shortly thereafter, acquired all the stock of the Morgan Company of which Charles Morgan had been the owner, and, in 1885, entered into a contract with said Morgan Company, and other railroad companies, the following excerpt from which will be sufficient for the purposes of this case, to-wit:

"The said Morgan's Louisiana and Texas Railroad and Steamship Company hereby leases to the Southern Pacific Company, for the term of ninety-nine years from the date hereof, its railroad, situated in the State of Louisiana, and known and designated as the Morgan's Louisiana and Texas Railroad, together with all the branches thereof, and the rolling stock, telegraph lines, tools, and property of every sort and nature whatsoever, now in use upon, or in connection with, said railroad and branches, and together with all the appurtenances thereunto belonging; also all steamships, tugs, wharves, piers, landings, depots, buildings and all other property, real and personal, now owned, held, or possessed, by the said Morgan's Louisiana and Texas Railroad and Steamship Company, with the right to possess, maintain, use and operate, the said property, and to receive the rents, issues, and profits, thereof."

In consideration of this lease, the Southern Pacific Company

assumed certain obligations of the Morgan Company and agreed to pay to that company a certain proportion of its (the Southern Pacific Company's) profits.

The particular warehouses, the operation of which has given rise to this controversy, to-wit: the "Bienville" and "Poydras," were built by the Morgan Company in 1889 and 1892, respectively, and are owned by that company. The Southern Pacific Company, however, shortly after they were built, assumed control of them, by virtue of some arrangement, the particulars of which are not disclosed, and continued to manage them until May 4th, 1899, when it surrendered such control and management to the Morgan Company, which company, upon May 19, 1899, had obtained a certificate, or license, to do business as a public warehouseman, agreeably to the provisions of Act No. 156 of 1888, and has, since that date, conducted such business in its own name, and for its own account.

## OPINION.

It is nowhere charged, in the pleadings, that either the Southern Pacific, or the Morgan, Company, was not legally incorporated, or that either of them failed to enter upon the uses of its corporate franchise; or that it was incompetent for the Southern Pacific Company to acquire the stock of the Morgan Company, or to lease, or operate, its railroad, or that the lease of its tangible property divested the franchise and terminated the existence of the Morgan Company. These questions are not, therefore, issues in the case, and they were not issues, and were not decided, in the case against the Southern Pacific Company. The proposition presented in that case, and decided by this court, was, that the Southern Pacific Company, exercising the franchises conferred by its own charter, a Kentucky statute, and operating tangible property leased from the Morgan Company, could not carry on, in this State, the warehouse business, as an independent business, whether as a public warehouseman, under the Act of 1888, or otherwise, but that, in so far as that business is concerned, it must confine itself to such as is incidental to the operation of the railroads of which it is lessee. Whether the lessor, the Morgan Company, if operating its road, itself, or without operating it, could carry on a warehouse business, independently, incidentally, or otherwise, was neither presented nor considered for the purposes of the decision so rendered; but if it had been presented and considered, it is difficult to

perceive how it could have been so decided as to bind the Morgan Company, since that company was not a party to the suit, and the Southern Pacific Company was without authority, and did not pretend, to stand in judgment for it with respect to its franchises, or its autonomy.

It is now said on behalf of the State, that, where a railroad company, acting without authority, leases its road to another company, it remains bound for the acts of the lessee in the management of the property so leased; and we are referred to the case of Fisher vs, West Virginia & Pittsburg R. R. Co., 23 L. R. A. 758. But, in that case, the suit was brought on behalf of a passenger, who was injured, against the lessor company, and the defendant filed a special plea, to the effect that it had leased its road to another company; and that the lessee should have been made the sole defendant. The question, whether the lessor would have been bound by a judgment in a suit to which the lessee, alone, was made a party, was not even suggested.

It is, also, said, on behalf of the State, that "a sale or transfer *pendente lite,* without any express or implied notice, affects the purchaser in the same manner as if he had had such notice, and he will, accordingly, be bound by the decree in the suit," from which it is argued that, because, pending the suit against the Southern Pacific Company, that company transferred its current warehouse business to the Morgan Company, the latter is bound by the judgment, subsequently rendered, against the former. The judgment against the Southern Pacific Company was to the effect that it cannot, under its Kentucky charter, carry on the warehouse business, as a substantive business, and that, with respect to said business, it must confine itself to that which is incidental to the railroad business, its right to conduct which was not called in question. In so far, therefore, as that judgment is said to affect the right of the Morgan Company, to conduct the warehouse business, as a substantive business, the case is about the same as if the proprietor of any ordinary business, who takes out a license, sells his stock and fixtures, but does not transfer, or part with, his license, and, in a suit against the vendee of the stock and fixtures, it is held that such vendee cannot conduct the business without a license. Such a judgment can hardly be said to conclude the vendor with respect to his use of the unexpired license, which he still holds. As to the right of the Morgan Company to carry on the warehouse business as incidental to that of a railroad, it is sufficient

for the purposes of the present question to say, that, in the judgment, it was held that the Southern Pacific Company, exercising the franchises conferred on it by the charter, has the right to carry on the warehouse business, as incidental to that of the railroad of which it is the lessee, and that the question here presented is whether the Morgan Company, by virtue of the franchise conferred by its charter, can carry on such warehouse business, as incidental to that of a railroad of which it is the lessor, and the lessee of which has undertaken to surrender its recognized rights in that respect. It may be, that, under its charter, the Southern Pacific Company can only engage in a warehouse business that is incidental to that of a railroad operated by itself, and that the Morgan Company, under its charter, has the further authority to engage in such business to the extent that it is incidental to that of a railroad operated by other companies.

It is further claimed, on behalf of the State, that the defendant is bound by the decree against the Southern Pacific Company because of its interest in the matter, its knowledge of the pendency of said suit, and its refusal to avail itself of its rights. But neither the interest, the knowledge, nor the refusal referred to are disclosed by the record. It is said, finally, that the Southern Pacific Company owns all the stock of the Morgan Company, and, hence, that the judgment against the former is binding upon the latter. There is no attack upon the autonomy of the Morgan Company, and the evidence does not show that there are no other persons occupying the positions of stockholders in said corporation than the Southern Pacific Company. But if it were otherwise, the authorities on the subject of the status of what may be called "nominal" stockholders, and of corporations the stock of which is owned by one person, concur, to the effect, that a person is none the less a stockholder, for the purpose of participating, in that capacity, in the administration of the affairs of the corporation, that his stock has been transferred to him merely to qualify him (Beach on Private Corporations, Vol. 1, Secs. 220, 222; Cook on Stock and Stockholders, Vol. 1, Sec. 623; Taylor on Corporations (3rd Ed.), Sec. 614; Louisville Gas Co. vs. Kaufman, 47 S. W. Rep. 439-440; Pulbrook vs. Richmond Consol Mining Co., 9 Ch. L. R. 610), and that the fact that one person owns all the stock in a corporation does not destroy the corporation, or make him and the corporation one and the same person, but that the latter continues to exist as a separate entity, and the former continues to occupy the

status of a stockholder. Cook on Stock and Stockholders (3rd Ed.), p. 9; Atchinson, etc., R. R. vs. Cochran, 23rd Pac. Rep. 151; Wilde vs. Jenkins, 4 Paige, 481; Central T. Co. vs. Kneeland, 138 U. S. 414; St. Louis, etc., Ry. vs. Williams, 138 W. Rep. 796; Southern Kansas, etc., R. R. vs. Tower, 21 Pac. Rep. 221; Button vs. Hoffman, 20 N. E. Rep. 668, 669; Belton praying, etc., 47 Ann. 1614, 1619.) We, therefore, conclude that the Morgan Company is not bound, as claimed, by the judgment heretofore rendered in the matter of State vs. Southern Pacific Company.

The remaining question is, whether, in the present condition of things, the Morgan Company has the right, under its charter, to carry on the warehouse business, as a substantive business, or as incidental to the business of any railroad of which it is the lessor, and which it is not, itself, engaged in conducting. If the contention of the counsel upon this subject be well founded, the defendant may establish and operate a public warehouse in every town and village in the State, however remote from, and disconnected with, its own railroad and steamship lines, and whether as independent of, or as incidental to, the business of railroads operated by other companies.

The authority relied on is an act of the Legislature, which is preceded by a title, and contains thirty-one sections; and both title and text are to be taken into account in determining whether the view thus presented should be sustained, since, it will be admitted that, the interpretation of particular provisions, is largely affected by the general purpose of the statute in which they are found, as appears from its title and from all its provisions, taken together, particularly when such statute is adopted, as in this instance, under the dominion of a Constitution, which requires that, "every law shall express its object or objects in its title." The title of the act in question reads as follows: "An Act to incorporate Morgan's Louisiana and Texas Railroad and Steamship Company, to expedite the extension, construction and maintenance, of a railroad between New Orleans, Louisiana, and the State of Texas, and between New Orleans, North Louisiana, and Arkansas; to declare and define the powers and liabilities of said company; to grant the right of way for the construction of the road; to authorize the expropriation of land; to own and run steamships and other vessels; to construct and operate telegraph lines; and to vest in said company the right to exercise all powers incidental to, and necessary for, the building, and mainten-

ance, of railroads to the State of Texas and to North Louisiana and to Arkansas."

And the following are some of its provisions, including all of those which refer especially to the warehouse business, the substance being given, unless it otherwise appears that the exact language is quoted, to-wit:

"*Sec. 2.* The following are the objects and purposes of this corporation, and the power to accomplish the same is hereby granted."

*First*—To own and operate the then existing railroad from New Orleans to Morgan City.

*Second*—To build and maintain a railroad from Morgan City to the Sabine river, for the purposes of said road, to build bridges over said river and over Berwick Bay.

*Third*—To build a railroad, with turnouts from its main line, into Northwestern Louisiana, there to connect with other roads running into Texas and Arkansas.

*Fourth*—To build a continuation of said railroad into Texas, under conditions to be imposed by that State.

*Fifth*—To own and run steamships and other vessels.

*Sixth*—To carry persons and property by said railroad and steamships and to receive compensation.

    *          *          *          *          *          *          *          *

*Sec. 5.* Said corporation is hereby authorized and empowered—

    *          *          *          *          *          *          *          *

*Third*—"To construct, establish, or purchase, in this State, and, thereafter, to own, lease, maintain and use, suitable wharves, piers, warehouses, yards, steamboats, harbors, depots, stations and other works and appurtenances, connected with, and incidental to, said railway and its connections; and to run and manage the same as the directors of said company may deem most expedient, and for the welfare of said corporation, subject to police powers of municipal corporations."

*Fourth*—To take and transport, carry, and convey, persons and property upon its said railway and steamships and upon its boats, by power of steam and by other power, and to receive, for safe keeping, and to store, merchandise and property, in its yards or warehouses, and to receive, for such transportation, safe keeping, or storage, such tolls and charges, as may, from time to time, be established, or authorized to be established, by the directors of said railroad com-

pany; to make advances of money, or credit, upon merchandise or property, for charges, made by other transportation lines" (upon freight?) "to be transported upon its railways, steamships, steamboats or vessels, or to be stored in its yards or warehouses, to such extent and upon such terms and conditions as the directors of said company may, from time to time, establish, or authorize to be established."

\*       \*       \*       \*       \*       \*       \*       \*

"*Sec. 27.* That the said company, with the consent of owners of lands fronting upon any navigable water course, or, after such lands have been acquired by the company, by purchase, lease, donation, or in any other manner in accordance with the laws of the State of Louisiana, may erect, construct, and thereafter maintain and use, wharves, warehouses, depots, and other buildings and structures, in, or upon, the margins, or upon that portion of the margins reserved to public use, of any and all navigable rivers, bayous, or water courses, in the State of Louisiana, wherever the same may be deemed, by a majority of the stockholders of the company, necessary and requisite to the legitimate and convenient transaction of the business of the company. And, within the limits of incorporated cities, or towns, the Mayor and a majority of the Council of such city, or town, may authorize the construction of said wharves, or other buildings or structures, in front of all public squares, or streets, that may be bounded by such navigable watercourses, such use to be subject to such general rules as may be ordained by the proper local government."

It will be seen that, neither the title, in which the purposes of the act are declared, in general terms, nor Section 2, in which those purposes are specifically declared, suggest the idea of a corporation to maintain warehouses for the storage of goods, as an independent business, or as a business incidental to that of a railroad other than the railroad to be operated by the corporation established by the act.

But, pretermitting the title and the section thus mentoned, the learned counsel for the defendant, after quoting, in their brief, the "*Third*" paragraph of Section 5, say: "It will be seen from the foregoing that the Morgan Company is not only given, by implication, as follows from the decision in the Southern Pacific Company case, the warehouse powers necessary and incidental to railroad operation, but power is expressly given to it to construct warehouses, and to run and manage the same as the directors of the company may deem most expedient, etc. It is not charged in the petition that the Morgan

Company has erected warehouses not incidental to, or connected with, its railroads, and the contrary is disclosed by the record, filed with the petition, of the suit against the Southern Pacific Company. It would seem, therefore, that the wide powers as to running and managing such warehouses would give very wide discretion as to the employment of the warehouse space, at times when it should not be in actual use, even if we assume that the words—"connected with, and incidental to, said railway and its connections"—apply to "warehouses," and not to the words which immediately precede them, namely; "other works and appurtenances." We contend, however, that the contrary is the case; that the words—"connected with, and incidental to, said railway"— no more limit the right to construct warehouses than they limit the right to own and use steamboats."

We are unable to concur in this view. To us, the plain meaning of the paragraph is, that everything which the company is authorized "to construct, establish, or purchase  *  *  *  and, thereafter, to own, lease, maintain and use," from "wharves," which begins the enumeration, to "appurtenances," which ends it, is governed by the word "suitable," which precedes such enumeration, and the words "connected with, and incidental to, said railway, and its connections," which follow. And, hence, that, as the company is authorized "to construct, establish, or purchase  *  *  *  and, thereafter, to own, lease, maintain and use," only, such wharves, piers and warehouses"  ✔ as are "suitable" for, and "connected with, and incidental to;" its railway and connections, the proposition that the directors are authorized to run and manage such wharves, piers, and warehouses, etc., for some other, independent and totally foreign, purpose is untenable. But, if it were otherwise, and the learned counsel had succeeded in showing that according to the text of the act, the defendant was authorized to conduct a warehouse business as a substantive business, they would, at the same time, have shown that the text was, in that respect, broader than the title, which refers only to the railroad, telegraph, and steamship business.

"But," say the learned counsel, "be that as it may, all doubt as to the right to warehouse goods to the extent to which the Morgan Company is now doing is taken away by the fourth clause of Section 5, of the charter, which reads as follows (and the clause is quoted in the brief.)

But the " warehouses " referred to in the paragraph thus relied on,

like those referred to in the preceding paragraph of the same section, and in Section 27, which follows, are the warehouses which the company is authorized to "construct," "maintain," etc., as *"suitable"* for, and *"connected with, and incidental to,"* the railroad business, for the carrying on of which it is established, and, whilst the language of the paragraph in question is, in some respects, broader than that of the preceding paragraph, it does not justify the conclusion, the title and specifically declared purposes of the act being considered, that the law makers thereby intended that the warehouses which are to be constructed and maintained for one purpose should be operated for another.

We, therefore, conclude, the validity of the lease to the Southern Pacific Company not being called in question or passed on, that, upon the case, as presented, the defendant is without authority to carry on the business of public warehouseman, as an independent business, whether under its charter, or under Act No. 156 of 1888, or otherwise, and that it is likewise without authority to carry on such business as connected with, or incidental, to the business of the railroad operated by the Southern Pacific Company, of which it is lessor, or that of any railroad operated by any other person or corporation than itself. The judgment appealed from, we think, sufficiently expresses this idea, and it is affirmed.

BREAUX, J., concurs in the decree.

Rehearing refused.