BREAUX, J.
The state of Louisiana brought this suit to enjoin the Morgan’s Louisiana & Texas Railroad & Steamship Company from receiving rental or other compensation from the New Orleans Warehouse Company, or from any other person, for storage in its warehouses.
The state further sues to enjoin the New Orleans Warehouse Company from conducting or carrying on a public or private warehouse in the depots or buildings of the Morgan's Louisiana & Texas Railroad & Steamship Company, and especially from receiving-in its warehouses any agricultural products or other property on storage, from collecting any compensation for storage from any one, and from issuing warehouse receipts, and from doing any business as a public warehouseman.
Plaintiff also sued to annul and set aside a lease made by the Morgan’s Louisiana & Texas Railroad & Steamship Company of its warehouses to the New Orleans Warehouse Company, and to have it decreed by the court that Morgan's Louisiana & Texas Railroad & Steamship -Company has no right to lease its property for warehousing purposes.
The present suit is the third brought by the state of Louisiana to close the warehouses in question, to the extent that they are public warehouses.
These warehouses take part of the buildings of the Morgan’s Louisiana & Texas Railroad & Steamship Company. The lower floors of these buildings are used for depots of this railroad company. The stories above the first are leased to the New Orleans Warehouse Company. The state charges that these are offending warehouses.
The history of the litigation shows that the first suit was brought against the Southern Pacific Company to enjoin it from conducting a business as before mentioned in the buildings of the Morgan’s Louisiana & Texas Railroad & Steamship Company. The grounds of the suit were that the Southern Pacific Company was carrying on business ultra its charter, in which charter nothing is written authorizing it to carry on a. warehouse business. Judgment was, in consequence, pronounced in favor of the state and against this defendant, the Southern Pacific Company, forbidding it from carrying on a business as public warehouseman for hire. State v. Southern Pac. Co., 52 La. Ann. 1822, 28 South. 372.
It appears that the Morgan’s Louisiana & Texas Railroad & Steamship Company had leased its road, including the buildings in which public warehousing had been conducted, to the Southern Pacific Company.
Prior to the date that the judgment before mentioned was pronounced, the Southern Pacific Company withdrev/ from the business of warehousing property, and surrendered its lease, and returned the business of these warehouses to the Morgan’s Louisiana & Texas Railroad & Steamship Company. The Morgan’s Louisiana & Texas Railroad & Steamship Company continued the warehouse business previously carried on by the Southern Pacific Company, and which the latter had been enjoined from conducting.
In 1900 the state, alleging that the Morgan’s Louisiana & Texas Railroad & Steam-' ship Company was conducting the business of public warehouseman, sought a judgment on the ground, inter alia, that the Morgan’s Louisiana & Texas Railroad & Steamship Company was not authorized to carry on the business of public warehouseman, and that it *67 was not authorized to sell, convey, or otherwise transfer, by sale, lease, or otherwise, any right, privilege, or franchise to receive and store agricultural products or other property. State v. Morgan’s L. & T. R. & S. S. Co., 106 La. 513, 31 South. 115. The facts are clearly stated in the cited cases supra. We will not restate them to any extent here.
In the last-cited case the judgment of the district court did not grant the injunction to the extent for which the state sued, but restricted the relief granted to an injunction prohibiting the defendant from carrying on a business as a public warehouseman. The decree in the last decision cited supra prohibited the Morgan’s Louisiana & Texas Railroad & Steamship Company from carrying' on a business of public warehouseman, but not a word is said in this decree about its authority to lease or sell this property. The question, it follows, of the Morgan’s Louisiana & Texas Railroad & Steamship Company’s right to sell or lease this property, is still left open, and is the one question now before us for consideration.
The state charges, in the first place, that the New Orleans Warehouse Company was formed merely for the purpose of circumventing and defeating the judgment rendered in the case of State v. Morgan’s L. & T. R. & S. S. Co., 106 La. 513, 31 South. 115.
We are not impressed by that view. It is not sustained by the evidence, nor by the result of the litigation in this case. Had the defendant the Morgan’s Louisiana & Texas Railroad & Steamship Company been enjoined by the decree of court last cited to the extent of preventing it not only from keeping the warehouse as a public warehouse, but also from leasing or selling the property, as prayed for by the state, there would have been ground sustaining the state’s objection.
There was, in view of the result of the suit now before us for determination, at least some ground for the New Orleans Warehouse Company to infer that the Morgan’s Louisiana & Texas Railroad & Steamship Company’s right to sell or lease the property would not be denied, in view of the fact that that particular issue had not been decided in the cited cases supra. The trend of the litigation at the date of the lease was, in other words, not such as to directly warn the defendant warehouse company against becoming a lessee of the Morgan’s Louisiana & Texas Railroad & Steamship Company. It took the chances of adverse litigation, which was, after all, not adverse in the end. Besides, there is no defense made here on the ground that the lease was made prior to the decision of any suit. The fact that certain transactions were entered into pendente lite secures no advantage to the defendant. This is the extent of the law prohibiting the sale or other disposition of property during the pendency of a suit.
Plaintiff further charges that the letting of this warehouse by the Morgan’s Louisiana & Texas Railroad & Steamship Company to the New Orleans Warehouse Company created a monopoly, and that the act is in restraint of trade, by giving to this warehouse company the preference over all others engaged in the warehouse business.
We do not think that the preference referred to creates a monopoly. It is a preference resulting from the business.
The proximity of the structures in question, and the greater convenience they afford in handling and storing freights, are not the conclusive preference which the law abhors as monopoly.
There are other warehouses similarly situated near the depots of other railroads, and in consequence they afford greater facility than warehouses situated at a distance. The latter warehouses — those situated at a distance — have no valid ground for complaint. They must carry on their business so as to be able to compete. Utility offered by these warehouses (i. e., those at a distance), and also charges, should be equal to those of others (i. e., of those nearer the railroad depots). It is one of the requirements of commerce, with which the court must decline to interfere. In loyal competition the community finds its greatest interest, and the public is in no way concerned in closing warehouses be*cause -they afford cheaper rates of storage.
The evidence does not disclose that the least attempt is made by this defendant, Morgan Railroad Company, to improperly influence business, or that it requires property to be stored in the warehouses it has leased to its codefendant, the New Orleans Warehouse Company.
That the Morgan’s Louisiana & Texas Railroad & Steamship Company disabled it *69 self by the lease in question from receiving into these buildings. freight by its railroad, and thereby failed at times in its most important duty as common carrier, is another charge of plaintiff. This charge is not sustained by the evidence. It does not show, as charged by plaintiff, that the blockades of freight were owing to the fact that these buildings are leased. On the contrary, it appears that the attempted use by the Morgan’s Louisiana & Texas Railroad & Steamship Company of the upper stories, as suggested by plaintiff, would have added to the blockade of freight.
The cause of the congestion of freight alleged by plaintiff was traced by witnesses in a position to know to the lack of motive power of the Morgan’s Louisiana & Texas Railroad & Steamship Company, and to the enormous volume of business during the business season, but not to the fact that the Morgan’s Louisiana & Texas Railroad & Steamship Company had leased these upper stories.
Another contention of plaintiff is that Act No. 37 of 1877, creating the Morgan’s Louisiana & Texas Railroad & Steamship Company, did not give to them the right to lease any of its property to others, and that in consequence the lease of its buildings to the New Orleans Warehouse Company was ultra vires.
In answer, we can only say that this corporation had the right to sell the property. We think, under the circumstances, that the power to sell carries with it the power to lease. “The right given a corporation by its charter to hold real estate and buildings carries with it the right to lease them, and it is no objection to the validity of such lease that the business in which the property is said to be used is one which the corporation is not authorized to carry on, and that the rental is a share of the net profits.” Nye v. Storer, 46 N. E. 402, decided by the supreme court of Massachusetts.
Moreover, the warehouse company, a third person, was not placed under the necessity of particularly inquiring into the authority of the company from which it leased.
We do not find that the state has any interest in depriving a third person, acting in good faith, from becoming a lessee, on the ground urged here. An act might be decreed null in an action against the railroad company, although not null on the ground here, in so far as innocent third persons are concerned. The New Orleans Warehouse Company has not committed an act ultra vires.
“The harsh rule which requires a person dealing with corporations to take notice of the extent of their powers is subject to certain well-defined limitations. When the want of power is apparent upon an inspection of the charter or statute, the party dealing with the corporation may reasonably be presumed to have knowledge of the defect, and the defense of want of authority is available. But this defense of want of authority is available against him. It will not avail against one who cannot be presumed to have had knowledge of the want of authority to make the contract. Hence, if the act is apparently within the scope of the corporate powers, and the alleged defect rests upon the existence of certain extrinsic facts peculiarly within the knowledge of the corporate officers, the corporation, as against a third person dealing in good faith, is estopped denying that which by assuming to make the contract it has virtually affirmed. Thus a person dealing with a corporation is not bound to know that a power cannot be rightfully exercised in a particular case, as that the limit of indebtedness fixed by the charter has been reached.” Judge Elliott, in his treatise on the Law of Private Corporations (3d Ed. p. 217, § 215).
But we have found no good reason to hold that the Morgan’s Louisiana & Texas Railroad & Steamship Company is to be condemned because it attempted to dispose of the property to some advantage, by leasing it to the New Orleans Warehouse Company.
With reference to those upper stories, leased as before mentioned, it appears that they cannot be sold separately from the building. Such a sale is out of all question. It would be very much to the detriment of the seller.
Plaintiff’s contention is that these structures should be sold or closed to business, as now conducted, and, at any rate, that they should not be leased.
With reference to the upper portion of the property leased, we do not think that the article of the constitution (No. 265) invoked *71 by plaintiff, and which prohibits corporations from holding any real estate for a longer period than 10 years, except such as may be necessary for their legitimate business, is violated. The land and the lower stories of these buildings are indispensable to the Morgan's Louisiana & Texas Railroad & Steamship Company’s business. They (the Morgan Company) cannot, in law or reason, be condemned to sell this lower portion in order to get rid of the upper portion. This would be compelling the owner to part with property for a purpose never contemplated by the constitution.
The article of the constitution in question is directed against the permanent ownership of land not in use, and not against the incidental ownership of upper stories of buildings.
The Morgan’s Louisiana & Texas Railroad & Steamship Company had these upper structures on its hands.
It had the right to utilize them as it did.
There are trustworthy decisions sustaining the right to lease under the circumstances. In the main, this right was sustained in Railroad v. Bullard (Mich.) 79 N. W. 635; also in People v. Palace Car Co. (Ill.) 51 N. E. 664. See, also, upon this subject, 1 Wood, R. R. 548.
The testimony shows that it is to the interest of the shippers on this Morgan Railroad that their warehouses be kept open" to the public.
No one seriously questions that the common carrier’s purpose should always be towards promoting the interest of transportation, and that it should throw into its duty every energy to that end.
This purpose is not-diminished by leasing property as a public warehouse, in which its shippers are very much interested, and which it cannot itself operate.
The contention on the part of plaintiff is that carrying on a public warehouse is not incidental to the business of a railroad corporation.
The argument urges that a railroad company might lease a part of its premises for hotel purposes, because the hotel business is incidental to and auxiliary of its main business; citing Railway Co. v. Hooper, 160 U. S. 514. 16 Sup. Ct. 379, 40 L. Ed. 515. In our view, aL public- warehouse, also, may become necessary, and may be conducted in a building of the railroad company, under the circumstances as in this case.
After all, why should this right to lease be more restricted when storage is - concerned, than that of a hotel? One is as useful, in its particular line, as the other.
With reference to the attack made by the plaintiff on the organization of the New Orleans Warehouse Company, on a number of grounds (another branch of the case), we agree with the view expressed in Pinney v. Nelson, 183 U. S. 144, 22 Sup. Ct. 52, 46 L. Ed. 125, cited by plaintiff; i. e., that, when a corporation is formed in one state to carry on business in another, the charter contract must be assumed to have been made with reference to the latter.
But we do not think that the warehouse company has failed to observe our laws to such an extent, as relates to keeping a warehouse, as renders it necessary to put an end to its existence in this state.
Plaintiff raises the objection that the New Orleans Warehouse Company violates the law of Louisiana, because its charter authorizes stockjobbing, and thereby violates Rev. St. § 6S3, and also in that it authorizes the holding of stock in other corporations of similar character. The facts are as stated in the objection.
None the less, the lessor, the Morgan’s Louisiana & Texas Railroad & Steamship Com pany, cannot very well be prejudiced by a delegation of right which the state of New Jersey has undertaken to make.
In a direct action, it perhaps would present an issue leading to a different conclusion, or in a case in which the company was seeking to exercise such an authority. There is nothing of the kind here. It only seeks to exercise the power to become a lessee, — a right clearly delegated in its charter.
The state’s next contention is that no part of the capital stock has been paid in.
The total capital stock was fixed in the charter at $.10,000. The amount of capital stock was $1,000.
Plaintiff alleges that only the insignificant sum of $1,000 of the subscribed capital stock has been paid. This w--as the amount of cash required by the charter.
In State v. New Orleans Debenture Co., 51 La. Ann. 1835, 26 South. 1037, we said *73 “that the class of cases in which the charter does not contain provisions for paying cash is clearly differenced from that class in which it is declared in the charter that the stock must be paid in cash, and expresses the view that cash stock must be paid as provided in the charter.”
In the case now before us for decision, the cash stock was paid as required by the terms of the charter.
It is true that the public interest should be protected against fictitious corporations and fictitious stock, or partly fictitious. In this instance it does not appear that there is anything fictitious in the organization of the corporation.
We have not found that the charter contains any provision looking toward guarding its books from inspection, or that it has failed to comply with the law requiring it „to have an agent in this state.
But it is said, in addition, on the part of ifiaintiff, that the state of New Jersey is without power to incorporate and organize a corporation for the purpose solely of carrying-on and doing business as a public warehouse in this state.
No legislation has yet sought to exclude foreign corporations from doing business in Louisiana. No one seriously questions the authority of the lawmaking power to exclude foreign corporations, but, before it does speak, we -would not be justified in discriminating between a foreign corporation doing business in another state, and at the same time one doing- business here as an incident of its main business, and a foreign corporation organized in another state only to.do business here, if in all respects the charter, as relates to the business done, conforms with the laws of Louisiana.
The charter of the warehouse company authorized it to do a warehouse business. This right it could exercise, although the transferror did not have a similar right. The property necessarily passed free from any personal inhibition against the transferror.
We have given careful attention to the different points presented, and while we feel justified in commending- the ability and energy of the attorney general and his assistant counsel, we do not think we must decree that an industry should be closed to the public unless it is clearly apparent that it falls within some statute requiring it to be closed.
In our view, the law and the evidence being in favor of the defendant, the judgment appealed from is affirmed.