## No. 11,374.

### JOHN R. CAWTHON VS. W. E. KIMBELL ET AL.

An amended answer is permitted when it amplifies a general denial and enumerates the reasons why plaintiff should not recover and does not change the relief prayed for in the original answer, and is really in the furtherance of justice.

An heir to whom a slave has been donated is bound to collate the value of the slave notwithstanding he was emancipated.

The heir who accepts a donation and takes possession of the property can not repudiate the title under which he holds said property, retain the same, and claim exemption from the obligation of collating. The donation may be null as not being in conformity to law regulating the manner by which they should be executed, yet the informality *per se* of the act can not be urged by the donee to the prejudice of the other heirs.

#### ON APPLICATION FOR REHEARING.

The grandson it is claimed owed as a collation to the succession of his grandfather the value of a slave.

The only evidence offered in support of the title by donation was a receipt under private signature signed by his mother in 1861, who acknowledged receipt of the slave from her father (who was the grandfather of plaintiff).

The donation was null for matters of form.

The nullity was not cured by the delivery of the slave.

A donation *inter vivos* of real property, null for want of form prescribed by law can not be confirmed by the donor years after the death of the donee, and after the slave donated had been emancipated.

The confirmative act consists of the donor's testimony in a suit *inter alios* to the effect that he had made the donation.

The grandfather's testimony was not given with the view of confirming the donation or with the intention of charging his grandson with the value of the slave.

The grandson does not owe collation, as he (or his mother) never had title to the slave.

The judgment of the District Court is annulled in order that settlement may be made with plaintiff without deducting from his portion any amount claimed as collation for the value of a slave.

A PPEAL from the Third District Court, Parish of Claiborne.
*Barksdale, J.*

*John A. Richardson* for Plaintiff and Appellant:

The plea of payment admits the existence of the debt, if defendant does not make good his plea. 3 N. S. 273; 12 L. 397; 14 An. 54; 25 An. 182.

After pleading payment defendant can not withdraw the plea to deny the debt. 26 An. 630.

An amendment to an answer will not be allowed which substantially changes the defence. 30 An. 1099.

The plea of payment admits the debt, and any amendment that would throw on plaintiff the burden of proving the debt changes the defence and is not admissible.

An act shall be passed before a notary public and two witnesses of every donation *inter vivos* of immovable property, of slaves or incorporeal things, such as rents, credits, rights or actions under the penalty of nullity. C. C. 1523, Code of 1825 (this is the same article as 1536 of the present code, only the words " of slaves " are omitted). 34 An. 448; 23 An. 242; 22 An. 359; 4 N. S. 468.

The donor can not, by any confirmative act, supply the defects of a donation *inter vivos* null in form; it must be executed again in legal form. C. C. 2273 (2253).

The heirs or assigns of the donor, during his, the donor's life, can not confirm or ratify donations null in form. C. C. 2274 (2254); 6 R. 229.

A donation of a slave in 1861 null in form, the donor dying in 1888, the burden of showing a ratification or confirmation of said donation rests on the party whose interest it is to establish the fact.

Slaves donated prior or during the war, and liberated before the death of the donor, while in the possession of the donee, are not subject to collation. 29 An. 495; 34 An. 443; 40 An. 334.

In 14 L. 352, Barton vs. Burton, the court, acting on the presumption that the law of Georgia on the subject of donation was the same as ours, held (p. 356) that slaves *received as gifts* (without an act of donation) were the objects of donation, and subject to collation according to the laws of Louisiana, and held, and forced the collation of the same, in a proceeding like this. *Vide* 19 L. 263, Gillespie vs. Day.

40 An. 334, Succession of R. H. and Sarah J. Hallie—the question here being almost identical to the one at bar, the question of the collation of slaves in which there was *no written* act of donation. The court held that the fact there was no written act was " insignificant," as no one disputed her *right* to them, and she acted as the *owner*. Here Mrs. Stewart admitted she received the slaves, but resisted the collation for the reason there was no written act of donation. The court held she must collate. In the case at bar, plaintiff admits in the record she received the

slave as stated in the receipt, but resists collation for it because the act was not passed before a notary. We submit that is "insignificant," as no one is disputing the title, and she acted as the owner and should collate.'

We also refer the court: 3 An. 522; 9 An. 291; 34 An. 440; 36 An. 744; 10 An. 504.

The plaintiff admits that "Mrs. Emily Cawthon received one thousand five hundred dollars, as shown by receipt attached to answer, to be accounted for in some way (out of the succession of John Kimbell), if subject to collation under the law." This admission precludes and estops plaintiffs from urging any defects in the title that Mrs. Cawthon may have had to the negro. He admits that his mother received this negro from John Kimbell as an advance, and that she was to *account for* it out of the estate of John Kimbell. The expression "if subject to collation under the law" had reference exclusively to the question of the "emancipation of slavery before the death of the donor," and can not refer to the question of title to the slave.

Representation, which takes place in the case of a child coming to the succession in place of his father deceased before the opening of the succession, should not be confounded with transmission, which takes place when the father, called to the succession, dies after it is opened, without becoming full heir by acceptance. *He transmits his right to his heir, who can not exercise it without accepting his succession, since the right forms part of it.* He, then, who comes to the succession by representation comes *suo jure*, and who comes by transmission *alieno jure*.

Representation is limited to descendants, and to brothers and sisters and their descendants. So, representation can not take place in favor of the cousins of the deceased (7 N. S. 336); nor is it admitted at all in irregular successions, except in the case of a natural child. C. C. 923; Succession of Debreuil, 25 An. 372.

The question is, does this plaintiff inherit in his own right or is it by representation? for it may be claimed under Art. 1240, C. C., that he comes in in his own right and is not required to collate gifts, etc., made to his mother, while our contention is, he inherits by representation, and is compelled to collate, etc.

C. C., Art. 1240: "In like manner, the grandchild, when inheriting in his own right from the grandfather or grandmother, is not obliged to refund the gifts made to his father, even though he should have accepted the succession; but if the grandchild comes in only by right of representation, he must collate what had been given to his father, even though he should have renounced his inheritance."

The case of Calhoun vs. Crossgrove, 33 An. 1004, cited by plaintiff, does not apply to the facts of this case. In that case it is a "debt" which is the object of collation, while in the case at bar it is "an advance" that the plaintiff is called on to account for. The court, in the Crossgrove case, strongly intimates that if the amount had been given as "an advance" the decision would have been otherwise.

Defendants insist that this plaintiff comes in "by representatives," and is bound to collate the property mentioned in the receipt by taking less. They rely on Succession of Meyer, 44 An. 871.

*Joel W. Holbert* Attorney for Defendant and Appellee:

The opinion of the court was delivered by

McENERY, J. John Kimbell was twice married. By the first marriage there were five children; by the second four. The first wife died in 1851, and the second marriage was celebrated in May, 1853. John Kimbell died in 1888, leaving the second wife surviving.

Emily Kimbell, issue of the first marriage, married A. L. Cawthon. John R. Cawthon, the plaintiff, is the issue of this marriage. His mother died in 1861, and his father in 1863.

The plaintiff instituted this suit against the surviving widow and the heirs of the second marriage, alleging that John Kimbell, his grandfather, brought twenty-eight hundred acres of land and some lots in the town of Homer and some personal property into the second community which was his grandfather's separate property, and valued at thirteen thousand four hundred and fifty dollars, and is entitled as heir of John Kimbell to one-eighth of all this property and

48

one-sixteenth of the personal property acquired during the second community, and in his possession at the time of his death.

His one-eighth interest is valued at one thousand nine hundred and five dollars. There was a partition of the property among the heirs of John Kimbell by the second marriage. This partition is attacked, and there is a prayer for it to be declared null and void, and that the land be restored to the succession of John Kimbell.

This land, it is alleged, embraced fifteen hundred acres, the balance remaining after having made donations to his children, and which the second wife and the four children by the second marriage partitioned among themselves. He prays for a moneyed judgment for his interest in all the property, with five per cent. interest from the death of John Kimbell, his grandfather, in default of returning the property to the succession.

In answer the defendants admit plaintiff is the heir of John Kimbell and plead a general denial, and averred that he had no interest in the succession of John Kimbell, as he had received more than his share in the estate of his grandfather during his lifetime, and that his mother had been settled with for her share in the estate of Cynthia Kimbell, her mother, and prayed that plaintiff's demand be rejected.

Before the case was set for trial the defendants filed a lengthy amended answer amplifying their original answer. This amended answer in no way changes the substance of the original answer, but enumerates the reasons why plaintiff should not recover by alleging that the land claimed by plaintiff was disposed of during John Kimbell's lifetime; that the personal property perished during his lifetime; that his mother had received an advance from the estate of John Kimbell, and was bound to collate the same.

There is no allegation of any fact in the answer that could not be proven under the original answer. It does not in any way change the original answer, and in the sound discretion of the court it was permissible in the furtherance of justice, as there was no injury to plaintiff or prejudice to his rights. The amended answer contains allegations also that are only legal inferences from facts stated. There was judgment rejecting plaintiff's demand, and he has appealed.

The statement in the record shows that John Kimbell owned in his lifetime two thousand acres of land. The deeds show that he

Cawthon vs. Kimbell et al.

disposed of one thousand seven hundred and fifteen acres, but there was error as to one hundred and twenty acres in the description, this amount not having been sold or parted with. This left four hundred and five acres on hand at his death. The defendants, however, admit that there were four hundred and sixty-nine acres on hand at the time of his death, which were partitioned among the four heirs and widow. The movables amounted to four hundred and fifty dollars. He gave to his children, exclusive of amount given to plaintiff's mother, seven thousand three hundred and eighty-five dollars. Add to this the amount given to the plaintiff's mother, the sum of fifteen hundred dollars, and the value of the land and the personal property of the succession, the amount to be distributed would be the sum of eleven thousand three hundred and ninety-two dollars, each heir's share being one thousand four hundred and twenty-four dollars, which shows that the plaintiff has received more than his portion of his grandfather's succession.

The plaintiff attacks the donation made to his mother because it does not conform to Article 1536, Revised Civil Code, which says that " an act shall be passed before a notary public and two witnesses of any donation *inter vivos* of immovable property or incorporeal things," etc.

The real contention is in relation to the donation of the slave.

The act of donation is as follows:

" Claiborne, La., received of John Kimbell the sum of seven hundred dollars in full of my interest in the succession of my mother, Cynthia Kimbell, deceased, and the sum of three hundred dollars in full of my interest in the estate and succession of my brother, John Randolph Kimbell, deceased, and the sum of fifteen hundred dollars, to-wit: a boy Billy, at thirteen hundred and fifty, and one hundred and fifty in money, to be charged to me from John Kimbell as his property in his succession and estate, this the 4th day of June, A. D. 1861.                                      EMILY KIMBELL."

" I authorize my wife to sign the above and bind herself.
                                      "A. T. CAWTHON."

The above receipt shows that the donation was executed and therefore accepted by the donee. C. C. 1541.

The plaintiff contends that as the donor in his lifetime never confirmed this donation to supply the defects in the original act, it

null and void, and no title to the property ever passed from him. So far as the donee is concerned, he can not retain the property and attack the donation, escaping the obligation of accounting for the same.

Having accepted the donation and being in possession of the effects donated, as to him it is perfected. In the case of Gillespie vs. Day, 19 La. 263, it was held that where the father made a verbal donation of a slave to a son, and at the death of his son as one of the members of a family meeting he advised that the property be sold as the property of the minor child of the deceased, he can not claim back either the slave or the proceeds, although the donation *per se* did not divest him of title. In the instant case in a judicial proceeding the grandfather acknowledged the donation to his daughter to the property donated in order to confirm title to the same to his grandson in the matter of his tutorship. We think the principle enunciated in the case referred to appropriately applies to this.

But independent of this the rule is universal in jurisprudence that a party can not retain the thing and repudiate the title by which he holds possession of it. Therefore if the plaintiff wants to participate in the succession of his grandfather he must account for what he has received as an advance in said succession. He can not retain the advance and come in and participate and thus destroy that equality which the law says must exist among the heirs.

The emancipation of the slave did not relieve the plaintiff from the obligation to collate that which his mother had received from his grandfather's estate. The property—the slave—was inherited by him from his mother and was a part of her estate when she died.

The donation of the slave was made in pursuance of Arts. 1361 and 1362 of the Code of 1825, which say:

Art. 1361. " When slaves have been given, the donee is not permitted to collate them in kind; he is bound to collate for them by taking less, according to the value of the slaves at the time of the donation."

Art. 1362. " Therefore the donation of slaves contains an absolute transfer of the rights of the donor to the donee in the slaves thus given. They are at the risk of the donee, who is bound to support their loss or deterioration, at the same time that he profits by the children born of them; and if the donee dispose in good faith of all or any of the slaves, the action of revendication for recovering the

slaves on the part of his co-heirs for the collation due to them will not lie against those who are the purchasers or holders of the slaves."

The donation of the slave invested the donee absolutely with title to him.  He was at his risk, and he must collate his value no matter in what manner the donee lost him, whether by sale, death, by theft, or by emancipation.

But this is no longer an open question.  The jurisprudence on this point is firmly fixed.  Slaves donated and lost by emancipation while in the possession and ownership of the donee do not relieve the donee from the obligation of collating their value.  Ventress vs. Brown, 34 An. 457; Succession of Hale, 40 An. 335; Succession of Meyer, 44 An. 871.

We find no error in the judgment appealed from.

Judgment affirmed.


ON APPLICATION FOR REHEARING.

BREAUX, J.  The careful attention heretofore given to this case relieves us from the necessity of restating all the facts.

We will only restate those facts material to a decision of the question remaining an issue between the parties to the suit.

Counsel for the plaintiff admits that all the points in the case heretofore decided were correctly decided, except one, he contends.

The excepted and disputed point relates to the alleged donation of a negro.

In the year 1861 the mother of plaintiff, authorized by her husband, executed a receipt for the slave valued at thirteen hundred and fifty dollars, and one hundred and fifty dollars in money as an advance upon her share, to be accounted for in the settlement of her father's succession.

Her father, the alleged donor, was not a party to the receipt, and there is no evidence, other than this receipt, of an intended donation.

The defendant pleads ratification.  This alleged ratification consisted of testimony of plaintiff's grandfather, given in a suit brought by J. A. Cawthon et al. vs. J. E. Cawthon, to which the witness, John Kimbell, the said grandfather, was not a party and in which none of the issues of the case at bar were involved.  He deposed that he held the receipt in question, showing that his daughter had been placed in possession of the slave as stated in the receipt.

The receipt was not in the form required to establish a donation *inter vivos* of property it is contended was donated.

It is elementary that in a donation form is of the essence, and that to have a binding force the act shall be passed before a notary public and two witnesses, of immovable property, including under the law, slaves at the date of the donation.

We have said that donations *inter vivos* are solemn contracts, subjected to certain forms, without which they are inexistent.

To form a particular importance is given, as it completes and gives life to the act; *forma dat esse rei.*

The solemnity is established by the notarial act.

The offer of the donor and the acceptance of the donee are valid after signing the act.

The alleged donor was not at all a party to the receipt.

As a donation it was originally an absolute nullity. It was not translative of title.

Whether there was a confirmative act, confirming in effect the donation alleged, is the next question at issue.

If there was no confirming act there was no donation.

We have already stated that the act of confirmation urged by counsel for the defendant is the deposition of the donor, in a suit, in which the plaintiff, the heir of the alleged donee, was not a party.

The testimony of the alleged donor was not given, after it had become evident that he was aware of any defect of form, and that it was his intention, by testifying as he testified, to confirm a donation.

In support of defendant's contention that there was confirmation of the receipt in question, giving it the effect of an act of donation, we are referred to a number of cases as applying.

The first cited case is that of Gillespie vs. Day, 19 L. 263.

The defendant Day claimed the price of a slave he alleged had been loaned or given by verbal agreement to his son.

The court held that, conceding the title to have been previously in him, and that the verbal donation *per se* was insufficient to divest him, yet the defendant as a member of the family meeting advised the sale of the property and suffered the slave to be sold as the property of his son, and in the act of partition in the record, signed by the defendant, the price of the slave is set down as forming part of the estate which came into his hand as tutor of the minor. The slave as donated property was not involved.

The contest related to the proceeds of the sale.

It was so mnch in cash, the father and tutor had judicially admitted (in proceedings, in effect contradictory), was owned by his son.

The court held him bound by his declaration without regard to any intended donation of a slave. There was virtually a manual gift of an amount in cash. A delivery *de manu in manum*.

In Deschapelles vs. Lebarre, 3 An. 522, a donation void in form, confirmed by the heirs, was held valid under the special provision of the code authorizing the heirs to confirm a donation. Under that article heirs may be held bound by their voluntary execution of the donation.

From that decision we quote: "The title of the heirs of the donee to the property donated was rendered perfect by confirmation" by the heirs.

An entirely different question from that involved on this point in the case at bar, in which the heirs of the donee have never confirmed the contract of donation by any act or declaration whatever.

In Ventress vs. Brown, 34 An. 457, and in Succession of Hale, 40 An. 335, the form of the donation was not involved as between the donor and donee. In the first case—that of Ventress—the confirmation had been made by the heirs of the donor under Art. 2274 of the Civil Code.

In the second case—that of the Succession of Hale—the right of the donee to the slave was not questioned at all. She, the donee, contended that the emancipation of the slaves relieved her from the obligation of collating slaves donated to her, and rested her defence principally upon that ground.

In the case under discussion, the point is raised that the writing is not the writing of the donor; that it is only a receipt of the alleged donee.

To sustain the plea of donation would add an obligation to be discharged by the heir of the alleged donee many years after the opening of the succession and after the loss of the property not donated in compliance with the required form.

The possession of the slave by plaintiff's mother, and the fact that the delivery dates about the time the receipt was executed, are not equivalents to confirming acts.

The terms of the law are absolute, and delivery of the property does not give validity to a contract of donation null for the want of

form.   Baudry de Lacantiniere, Vol. 2, p. 872; Toullier, Vol. 4, p. 472.

Judge Mathews, for the court, said, in the case of William vs. Horton, 4 N. S. 469: "But according to our law in relation to titles by which property is held, a written instrument is required in order to transfer slaves from one proprietor to another; and when the evidence offered in support of title to them is an act of donation, to give it validity it must appear clothed with all the formalities required by law and sanctioned by an authentic deed.   Mere possession is not evidence of title.       *       *       *

" In this species of contract forms appear to assume the place of substance."

In Harlin vs. Leglise, 3 R. 194, this court reiterated that which had been decided in the 4 N. S. 469, that an omission of form is not cured by the delivery of the slave.

In Packwood vs. Dorsey, 6 R. 331, the reasons for the judgment were given at some length.

It is useless to repeat them.   It will suffice to state the general propositions discussed.

The donation of real property must be executed before a notary and two witnesses.

A donation, null, can not be ratified by any confirmative act on the part of the donor and the voluntary execution of the donation by the donor will not prevent him from sustaining the plea of nullity.

In the decision the court controverts the doctrine of Toullier, that a void donation can be rendered valid by ratification, express or implied, on the part of the donor.

It leads, the court says, in that case, to an absurd conclusion, that while under the law no express confirmation or ratification can render valid a donation under private signature, it can be made so by the tacit ratification resulting from the voluntary execution of it by the donor.

" It would, moreover, render completely inoperative the positive provision of our law, that a donation, null for want of any of the requisite formalities must be made anew in legal form.   This provision alone surely excludes the idea that a void donation can be rendered valid by any ratification, either express or tacit, on the part of the donor."

A long list of names of French commentators expressing views

different from those of Toullier is copied in the body of the opinion.

The decisions of this court just reviewed accord with the commentators who differ from Toullier.

If we were to accept the doctrine of the latter, *i. e.*, of Toullier, this case would not fall under its grasp, for there was no ratification, either expressed or implied, such as could cure the nullity pleaded by plaintiff.

We have considered this question with care, and have reached our conclusion despite our desire to affirm our previously expressed opinion upon this point.

Our former decree remains unchanged, except in so far as may be necessary in order to carry out our views as herein expressed.

Our learned brother of the District Court, as usual with him, has carefully cast the account of the heirs and made the following statement:

| | |
|---|---:|
| Value of lands | $1,467 |
| Value of movables | 450 |
| Amount paid Mrs. Key | 1,000 |
| Amount paid Mrs. G. I. Kimbell | 1,000 |
| Amount paid Mrs. Jones | 1,000 |
| Amount paid Mrs. W. E. Kimbell | 800 |
| Amount paid Mrs. Andrews | 1,035 |
| Amount paid Mrs. S. L. Kimbell | 1,140 |
| Amount paid Mrs. Nelson | 1,000 |
| | $8,892 |

Counsel for the plaintiff and appellant, regarding these and other items involved, says in his brief:

"There is only one question or point which we claim is in error in coming to its conclusion in this case.

"The other points decided are correct law, but the whole decision is based on the point we claim the error consists, 'Having accepted the donation and being in possession of the effects donated, as to him, it is perfect.' If the court is correct in this proposition, the decision is correct; if incorrect, then the case is with the plaintiff."

We do not understand that the defendant and appellee dispute the correctness of these and other items of the account.

The whole contest centred in the question of collating, *vel non*, the value of a slave, not donated in due form.

In the present condition of the case another judgment must be entered; in view of the admissions of the correctness of certain items, presumably it will be final, before the court of the first instance.

The debits and credits will now be established and balances fixed, and the amount coming to each heir settled.

It is therefore ordered, adjudged and decreed that our former decree in this case be avoided and reversed, and it is further ordered, adjudged and decreed that the judgment appealed from be reversed and set aside, and it is now ordered, adjudged and decreed that there be judgment for plaintiff, decreeing that he is not obliged to collate the thirteen hundred and fifty dollars, value of the slave for which his late mother executed a receipt in 1861.

It is further ordered, adjudged and decreed that this case be remanded to be tried in accordance with the views herein expressed.

The defendant and appellees are condemned to pay the cost of appeal.

Those of the District Court are to be paid by the party cast on final decision in that court.