O’NIEDL, J.
The object of this suit was, ostensibly, to compel the defendant to comply with an agreement to buy, for $30,000, the property known as the old Schumpert Sanitarium site, at the corner of Texas avenue and Grand avenue, in Shreveport. In reality, as far as the original defendant is concerned, it is an amicable suit to test title to the property.
The defendant answered that plaintiff’s title was defective and particularly that a certain act of donation inter vivos made by Dr. John I. Schumpert, now deceased, to the plaintiff’s author in title was invalid, for several reasons which were specifically urged in defensé of the suit. On defendant’s demand, the heirs at law, collateral relations, of the deceased Dr. John I. Schumpert were cited as proper parties to defend the suit. They appeared, and, pleading nullity of the act of donation, for the reasons urged by the defendant Emery and for other reasons advanced by them, asked to be declared the owners of the property by inheritance from the deceased Dr. John I. Schumpert. The plaintiff then filed a plea of estoppel, claiming that Dr. John I. Schumpert had, by his conduct in certain particulars, recognized and ratified plaintiff’s ownership of the property, and that his heirs had also, by having all of the property of his estate inventoried and appraised and sold, and by dividing the proceeds among them, without claiming the property now in contest, recognized plaintiff’s title. The only serious contest then arose between the plaintiff and the Schumpert heirs. Judgment was rendered in favor of the plaintiff, declaring the title resulting from the dqnation valid. The defendants, Emery and the Schumpert heirs, prosecute this appeal.
[1, 2] The main cause of attack upon the validity of the donation, dated May 19, 1908, is that there was then no corporation having the corporate name “the Sisters of. Charity of the Incarnate Word, of Galveston, Texas,” the name by which the donee was designated or described in the act of donation. The defendants objected to the introduction of testimonial proof that the donee referred to in the act of donation was a corporation chartered under the Jaws of Texas, having the corporate name the “Hospital of the Sisters of Charity of the Incarnate Word, St. Mary’s Sanitarium, Galveston, Texas,” generally called the “Sisters of Charity of the Incarnate Word.” As the evidence introduced, over defendants’ objection, leaves no possible doubt or dispute of the identity of the donee, that element in the defense to the suit depends altogther upon the question of admissibility of parol evidence to identify the donee.
The property was bequeathed by the son of Dr. John I. Schumpert, Dr. T. Edgar Schumpert, in his last will and testament, dated May 13, 1908, to the religious order designated in the will thus, “To the Sisters now occupying and operating the Shreveport Sanitarium,” and the legacy was described in the will as “the property known as the Shreveport Sanitarium.” The sanitarium property was then and had been for several years leased by Dr. T. E. Schumpert to the religious order called in the lease the “Sisters of Charity of the Incarnate Word,” being the corporation styled in its charter the “Hospital of the Sisters of Charity of the Incarnate Word, St. Mary’s Infirmary, Galveston, Texas.”
Dr. T. E. Schumpert, in his practice of medicine, had been closely identified with the Shreveport Sanitarium, conducted by the Sisters of Charity. He was a patient there during his last illness, and died in the institution on the 16th of May, 1908. Because of some informality, his will was considered invalid, and was not offered for pro< bate. His father, being the sole heir, accepted the succession unconditionally, and was sent into possession under an order of court.
Desiring to carry out the will of his de *619 parted, son, Dr. John I. Schumpert made the donation in confirmation of the will, on the 19th of May, 1908, only 3 days after the son’s death. Although the donee was called in the act “the Sisters of Charity of the Incarnate Word, of Galveston, Texas,” the donor left no doubt about the identity of the donee; for he declared in the act that the donation was made in pursuance of the last will of Dr. T. E. Schumpert and because of his love and admiration for the said sisters and the noble and beneficent work they had done.
The act of donation itself, therefore, identified the donee as the religious order to whom the deceased, Dr. T. E. Schumpert, had willed the sanitarium property; and the will, in turn, identified the legatee as the Sisters who were then occupying and conducting the Shreveport Sanitarium, the property bequeathed. The only testimony that was needed, if indeed any was needed, and all that was offered to identify the donee, was to prove that the religious order who had leased the premises in the name of the Sisters of Charity of the Incarnate Word was the same that was incorporated in Texas, in 1894, under the name the “Hospital of the Sisters of Charity of the Incarnate Word, St. Mary’s Sanitarium, Galveston, Texas.” The testimonial proof was that there was no other institution, organization or association, either in Shreveport or in Galveston, known as the “Sisters of Charity” or the “Sisters of Charity of the Incarnate Word,” but that the corporation domiciled in Galveston, conducting a hospital there as well as in Shreveport, was generally known and referred to in Shreveport as the Sisters of Charity of the Incarnate Word, or, even more generally, the Sisters of Charity.
The objection to the testimony was and is that parol evidence is not admissible to prove title to real estate, or to contradict, vary, or enlarge the terms of a written instrument. The answer to the objection is that the parol evidence did not have that effect. The act of donation conveyed the title to the Sisters of Charity of the Incarnate Word; and the proof was merely that the full and correct corporate name of that institution was the hospital of the Sisters of Charity of the Incarnate Word, St. Mary’s Infirmary, Galveston, Texas. In so far as the testimony changed or enlarged the terms of the written instrument, it was admissible under the exception, made in articles 1714 and 1715 of the Civil Code, to the general rule excluding parol evidence to change or enlarge a written instrument. The codal provisions referred to are that, in case of obscurity or doubt about the identity of a legatee named or described in a will, testimony is admissible to show who was intended to be the legatee, as, for example, when there are two or more persons bearing the name of the legatee, the identity may be established by evidence as to who of the two or more persons of the same name was most intimate with the testator. And, in case of such doubt, or of any doubt about the intention of the testator, says article 1715 of the Code, recourse may be had to any and all circumstances that may aid in discovering his intention. There is no reason why that rule should not apply as well to a donation inter vivos as to a donation mortis causa, when the donor is dead.
It is argued in the brief of counsel for the Schumpert heirs that the plaintiff did not allege that there was ambiguity, doubt, or uncertainty as to the identity of the donee named in the act of donation. In truth there was not much room for doubt or uncertainty in that respect. But the Schumpert heirs made the issue by pleading that there was no corporation in existence, when the donation was made, having the name of the donee, “Sisters of Charity of the Incarnate Word, of Galveston, Texas.” To meet that issue, testimony was admissible to show that there was *621 a corporation in existence at the date of the donation, having a name similar to that of the donee, but somewhat longer, and answering in other respects the description given of the donee in the act of donation; that is, that the corporation legally styled the “Hospital of the Sisters of Charity of the Incarnate Word, St. Mary’s Infirmary, Galveston, Texas,” was the only institution or association that answered the description of the legatee named and described in the will of Dr. T. E. Schumpert, as “the Sisters (now) occupying and operating the Shreveport Sanitarium” ; and that the corporation referred to was the only institution or association that answered to the description given of the donee in the subsequent act of ratification and donation, saying that the donation to “the Sisters of Charity of the Incarnate Word, of Galveston, Texas,” was “made and accepted in pursuance of the last will of Dr. T. E. Schumpert.”
[3] If the donor had given the property to his friend Smith, we think that, under articles 1714 and 17Í5 of the Civil Code, testimony would have been admissible to prove that, of all his friends named Smith, John was the one referred to. But the law does not restrict the admissibility of testimonial proof of the identity of a donee or legatee to cases of such grave doubt. The identity of .a donee or legatee named or described in a donation or testament ought to be proven by extrinsic evidence in every case where the instrument itself leaves any doubt about the identity. See Burthe v. Denis, 31 La. Ann. 568, cited with approval in Succession of Stewart, 51 La. Ann. 1561, 26 South. 460, and in Miller v. Hirsch, 110 La. 264, 34 South. 435. See, also, Succession of Tilton, 133 La. 435, 63 South. 99, where a legacy bequeathed “to Home for Insane” was declared a valid bequest to the “East Louisiana Hospital for the Insane,” because the testimony showed that the testatrix had a personal interest in that institution, and believed it was the only home in the state for the insane. The court in that ease referred approvingly to the ruling on the admissibility of such testimony in Gilmer v. Stone, 120 U. S. 586, 7 Sup. Ct. 689, 30 L. Ed. 734, and to the common law, and the opinion of text-writers, holding such testimony admissible.
Our conclusion that parol evidence was admissible to identify the donee disposes of the defendants’ contention that the donee was not in existence when, the donation was made; in fact it does away with all of the objections relating to the identity of the donee.
[4, 5] Defendants assign as an error that the district judge allowed the plaintiff to amend the petition in this suit after tbe answers to the original petition were filed. The complaint is that the amendment came too late and changed the issues. We do not think it came too late. It was filed two weeks before the defendants answered it, and 17 days before the case was tried. The defendants accepted service of the amending petition, and made no objection to its being allowed when it was filed. It was only in their answer to the supplemental or amending petition that they contended that plaintiff should be held to the allegations of the original petition. The amendment was merely as to the name of the plaintiff’s author or authors in title. In the original petition it was alleged that plaintiff had acquired the property by purchase from the Sisters of Charity of the Incarnate Word, of Galveston, Texas, and that the latter had acquired title by donation from Dr. John I. Schumpert. In the supplemental or amending petition, plaintiff averred that the attorneys were in error in alleging that the Sisters of Charity of the Incarnate Word, of Galveston, Texas, had acquired title directly by donation from Dr. John I. Schumpert. Plaintiff then alleged, in the supplemental petition, the true facts, *623 which they proved on the trial, viz.: The Texas corporation styled the “Hospital of the Sisters of Charity of the Incarnate Word, St. Mary’s Infirmary, Galveston, Texas,” sold the property, on May 26, 1913, to a Texas corporation styled the “Sisters of Charity of the Incarnate Word, of the Diocese of Galveston.” The latter corporation was incorporated on the 1st of April, 1910, nearly 2 years after the date of the donation; and it appears that the new corporation succeeded, and took over all the affairs of, the Hospital of the Sisters of Charity of the Incarnate Word, St. Mary’s Infirmary, Galveston, Texas.
[6] We see no merit in the objection that the amendment of the petition changed the issues. The purpose of the amendment was not merely to correct an error made by plaintiff’s attorneys in the original petition, but to meet the issue tendered by defendants’ answer, regarding the true name and identity of the donee of the property in contest. The right of a litigant to amend his pleadings is highly favored when the only purpose and effect is to meet the ends of justice. The plaintiff in this case might have discontinued the suit and brought it anew if the court had not allowed the amendment. It is not pretended that any harm befell the defendants from the making or correcting of the error in the petition.
[7] The next defense in order is the contention that there was not a valid acceptance of the donation from Dr. John I. Schumpert. The instrument was signed and accepted for the donee by Sister Beatrice, who was then the Sister Superior of the order in Shreveport and had full charge of the infirmary there. It does not appear that she was authorized by a resolution of the board of directors of the corporation to accept the donation ; but her acceptance for the corporation was approved and ratified in every conceivable way by both the donee and the donor. Being already in possession of the property, the donee continued to occupy it as owner for nearly four years, under the act of donation, to the constant knowledge and with the approval of the donor. Article 1541 of the Civil Code provides that, if a donation has been executed, that is, if the donor has put the donee into corporeal possession of the property donated, the donation shall have full effect, even though it was not accepted in express terms. Although the word “effects” is used instead of “property” in the article referred to, it has been decided that the provision refers to real estate. See In re Lahaye, 115 La. 1093, 40 South. 468, and Baker v. Baker, 125 La. 975, 52 South. 115. In fact, article 1541 would have no meaning or purpose whatever if it did not refer to real estate; because article 1539 provides that a manual gift, that is, the giving of corporeal movable effects, accompanied by actual delivery, is not subject to any formality. The defendants rely upon the decision in Cawthon v. Kimbell, 46 La. Ann. 750, 15 South. 101, to the effect that a donation that is null for want of form is not made valid by a delivery of possession of the property. In that case, the informality, in the donation of a slave, was that there was no authentic deed. The ruling, therefore, has no application to a case where the only informality is that the donee did not accept in writing the act of donation. Besides, in Gawthon’s Case, it was the donee who denied having accepted the donation. The suit was to compel him to collate as an heir in the succession of the donor. Hence the ruling that the donation was not susceptible of being ratified by the donor after the slave had been emancipated is also not appropriate to. the case before us.
[8-10] The next contention of defendants is that the Hospital of the Sisters of Charity of the Incarnate Word, St. Mary’s Infirmary, Galveston, Texas, was, by the terms of its charter, not authorized to accept or receive *625 title to real estate by donation. It is conceded that the right of a corporation to acquire and hold title to real estate by purchase implies the right to acquire title by donation; and we do' not understand that it is or can be disputed that every private corporation has the implied right to acquire and own real estate, unless there is some special law or a provision in the charter to the contrary. Defendants point to the fact, as indicating that the donee in this case had no authority to own real estate, that the only objects or purposes for which the association was incorporated were declared in the charter to be to care for the sick, in hospitals, to care for insane persons, incurables, aged people, refugees, and foundlings, to conduct orphan asylums, schools of different kinds, and a training school for nurses. There is nothing in those provisions of the charter 'opposed to the idea that the corporation might own real estate, especially such as might be used for any of the expressed purposes of the incorporation. It is true the incorporators declared in the charter that the corporation had neither capital stock nor assets. That implied merely as a practical proposition that the corporation was unable to buy property, not that the corporation .could not receive a donation. There is nothing in the law of this state forbidding a foreign corporation of that character to own real estate here. And we are not informed of any law of the state of its creation that interfered with the corporation’s authority in that respect. In the absence of legislation to the contrary, a testator may legally devise lands in one state to a corporation created under the laws of another state.
[11,12] It is argued that the donee in this case was unable to accept the title granted in perpetuity, because the term of the charter of the donee was limited to 50 years, The answer is that the corporation, if it had not disposed of its property, might have obtained a new charter at the end of the 50 years. And, if it should have failed to do so, it would be time enough then for the Schumpert heirs to claim a reversion of the property. However, there seems to be no argument against the right of the donee to dispose as it did dispose of the property. In State v. New Orleans Warehouse Co., 109 La. 64, 33 South, 81, it was held that a corporation that ha'd no authority to do a particular business might transfer the property it had used in the business, closed by a judicial decree, until the property would be needed again, and that the purchaser or lessee in such case did not, by buying or leasing the property, incur any obligation or disability of the corporation transferring it.
[13] Defendant’s next contention is that the donation in question embodies a substitution or fidei commissum, both of which are prohibited by article 1520 of the Civil Code. The donation was made on a condition which, being valid, has been carried out, and which, if it had been invalid or impossible, but not an essential condition, would have been reputed or regarded as not written. R. Civ. Code, art. 1519. Our opinion is that the condition, or rather the one or the other of the alternative conditions, on 'which the donation was made, was an essential condition, or one which the donee was bound to comply with; but it was not a substitution or fidei commissum, as defined in our jurisprudence, reviewed in several recent decisions. See Succession of Reilly, 136 La. 347, 67 South. 27, Succession of Percival, 137 La. 203, 68 South. 409, and Succession of Hall, 141 La. 860, 75 South. 802.
Article 1527 of the Civil Code permits a donor to impose upon his donee any charge or condition not contrary to law or morals. The condition on which the donation was made by Dr. John I. Schumpert was that the sanitarium on the property donated should be named “T. E. Schumpert Memorial Sanitari *627 um,” and be maintained, in perpetuity, in that name, by the Sisters of Charity of the Incarnate Word, as a place for caring for •the sick and afflicted, in the city of Shreveport. Then followed the alternative stipulation which defendants contend embodied a prohibited substitution or a fidei commissum, viz.:
“But it is'expressly agreed that a sale of this property may be made by said donee on the condition that the proceeds of said sale shall be paid to Peter Youree, trustee, and to be only reinvested in the erection of another sanitarium in the city of Shreveport, which shall likewise be called and named the ‘T. E. Schumpert Memorial Sanitarium,’ and the said Youree, as trustee, must concur in any sale thereof and receive the price of such sale and hold the same as trustee until the same is reinvested in other property for like purposes.”
On the advice and approval of Dr. John I. Schumpert and of Peter Youree, the Sisters of Charity mortgaged the sanitarium property and borrowed from the Commercial National Bank, of which Peter Youree was president, a sum of money' with which they bought a larger tract of land, in a more guiet and more suitable neighborhood in Shreveport, for the proposed memorial sanitarium. The land cost $47,500, and by including it in the mortgage the Sisters then -borrowed enough money to build on the new site a four-story brick sanitarium, at a cost exceeding $140,000. The establishment bears the name “T. E. Schumpert Memorial Sanitarium,” and is said to be a credit to the state and to compare favorably with any of its size in the country. Peter Youree was the financial ad-visor and confidential friend of the Sisters of Charity, and he and Dr. John I. Schumpert encouraged and approved all that was done in establishing the new “T. E. Schumpert Memorial Sanitarium.” Dr. John I. Schumpert was the guest of honor at the public reception given in the new sanitarium on the occasion of its opening, and was praised in the public speeches made, as the benefactor of the community. Thereafter, the old sanitarium, which was a wooden or frame building, was destroyed by fire; and the insurance money, amounting to about $13,000, was paid to the mortgage creditor in reduction of the debt on the new sanitarium. A signboard, 5 feet by 10 feet in size, was then displayed on the old sanitarium site, offering and advertising it for sale; and Dr. John I. Schumpert must have observed the sign, for he passed it on his way to and from his home every day during the last few years he lived. 1-Ie died in Shreveport on the 10th of May, 1912. peter Youree died there in September, 1914. He had endeavored several times to negotiate a sale of the old sanitarium property, that the proceeds might be applied on the debt incurred for the new one, in accord with the condition in the act of donation; and his failure to consummate a sale was due, mainly if not entirely, to a fear on the part of each prospective purchaser that the title might not be valid. Dr. John I. Schumpert was also told of the negotiations to sell the old sanitarium site, and expressed his approval.
It is proven, therefore, and is not disputed, that the conditions on which, according to the act of donation, the old sanitarium property might be sold were complied with to the full and express satisfaction of the donor. The only detail in the conditions stipulated that cannot be carried out literally is that Peter Youree, being dead, cannot receive the price of the sale, as trustee, and pay it on the debt incurred in establishing the new memorial sanitarium. That condition is not of the essence of the donation, because the proceeds of the sale will be paid to the mortgage creditor in reduction of the debt on the new memorial sanitarium.
It is contended finally by the defendants that the plaintiff corporation, incorporated on the 5th of June, 1913, is not a charitable institution, within the meaning of the Act *629 No. 124 of 1882, exempting donations to any such institution from the laws prohibiting substitutions, fidei commissa, or donations in trust. Though the record discloses that the institution does considerable charity work, and that the Sisters of Oharity all work without financial profit or pay, our conclusion that there is no prohibited substitution or fidei commissum in the donation in question dispenses with our passing judgment on the question whether the plaintiff’s title is protected by the Act No. 124 of 1882.
The judgment is affirmed.
MONROE, O. J., dissents.
PRO VO STY, J., takes no part, not having heard the argument.