court for further proceedings consistent with the views herein expressed.

O'NIELL, C. J., does not take part.

HAMITER, J., concurs in the decree.

**20 So.2d 923**

**CONGREGATION OF SISTERS OF ST. JO-SEPH v. GLASSELL.**

**No. 37666.**

Jan. 15, 1945.

Herold, Cousin & Herold, of Shreveport, for defendant, appellant.

Charles Cecil Bird, Jr., of Baton Rouge, and Charles I. Denechaud and John T. Charbonnet, both of New Orleans, for plaintiff, appellee.

ROGERS, Justice.

This is an appeal by Alfred C. Glassell, Sr., from a judgment in favor of the Congregation of the Sisters of St. Joseph, ordering Glassell to comply with an agree-

ment to purchase for $200,000 certain immovable property situated in the City of Baton Rouge. The property consists of eight and one-third lots of ground with the improvements, situated in Square Number 7, bounded by Church, Florida, Laurel and Fifth Streets.

It is stipulated in the contract of sale that unless the title to all the property described therein was good and valid, Glassell would not be obligated to comply with his agreement. In accordance with this stipulation and acting on the opinion of his attorney that he did not consider plaintiff's title to all the property to be good and valid, Glassell declined to carry out his contract. This suit, while ostensibly filed to compel him to do so, is in reality an amicable suit to test title to the property.

The portion of the property to which defendant objects as being held by plaintiff under a defective title consists of four of the lots of ground which defendant agreed to purchase. These lots are designated by the numbers 5, 6 and 7, having a frontage of 320 feet on Florida Street and by the number 8, having a frontage of 64 feet on Fifth Street. The single question therefore to be considered by the Court is whether plaintiff has a good and valid title to these particular lots of ground.

The plaintiff, which is a religious and charitable corporation, acquired the four lots of ground in question by an act of donation executed on March 16, 1880, by the Benevolent Association of the Roman Catholic Ladies of Baton Rouge, a corporation organized by a special act of the Legislature—Act 118 of 1854—for the pur-

pose of extending aid and assistance to the poor and destitute in the Parish of East Baton Rouge. The legislative charter provided, among other things, "that none of the properties or money, income or revenues, and no part of said Institution, and no part of the gifts or donations made to the same, shall, in any manner, be employed or disposed of otherwise than for the exclusive use and benefit of the same, or for carrying out the objects for which said charitable Institution is founded." No method of liquidation or dissolution of the corporation was provided by the charter.

At some time prior to 1869, the property involved in this controversy was purchased in the name of Father Pierre C. Delacroix. It appears from certain correspondence in the record that Father Delacroix did not purchase the property for himself, but took title to it as a matter of convenience for the Benevolent Association of the Roman Catholic Ladies to whom, on April 14, 1869, by formal deed, he conveyed the property. This deed, as conceded by defendant, is absolute and unconditional.

The Benevolent Association of the Roman Catholic Ladies, after using the property as an orphan asylum for a number of years, and finding that they were unable to continue to maintain it successfully, in the Fall of 1869, transferred the institution to the Congregation of the Sisters of St. Joseph who moved into the property, and from that time have operated it as a school and orphanage.

On October 16, 1879, the Benevolent Association of the Roman Catholic Ladies adopted the following resolution: "At

a general meeting of the association called at the pastor's house of St. Joseph's Church of Baton Rouge: We the undersigned members of the Benevolent Association of the Roman Catholic Ladies of Baton Rouge, convinced of the impossibility for us, to fulfill in a profitable manner, for the orphans, the end of our association: Do hereby authorize Miss Sophie Mansan, our president, and Mad. Duncan, and Mad. McVay to transfer the property of said association to the Religious of St. Joseph, on the condition for them to always keep the asylum for the Orphans of East Baton Rouge as they have kept it for the last eleven years, to the satisfaction of all."

Acting under the authority granted by the foregoing resolution, the ladies mentioned therein executed the act of donation to the Congregation of the Sisters of St. Joseph on March 16, 1880. This donation contains the following clause: "This donation is made and accepted for and in consideration of the Sisters of St. Joseph always maintaining the Asylum and providing for the Orphans of East Baton Rouge, the said Benevolent Association of the Catholic Ladies being convinced of the impossibility of providing in a suitable and proper manner for the maintenance and education of the said Orphans. It being well understood and agreed that in the event the said Religious of St. Joseph should think proper to transfer to another locality, in said Town of Baton Rouge, the said Asylum, they will have the right to do the same; or in case they should abandon said premises, then such improvements that may have been done by them on said premises shall be valued by experts equally chosen in both parties and the evaluation thereof will be reimbursed to the said Sisters of St. Joseph."

It is this clause in the act of donation which has caused the defendant to refuse to accept title to the property. It is argued on behalf of defendant that, under this muniment of title, in the event the donee should cease to use the property for which it was donated, the right to "return" or the right of revocation would come into existence, and that the abandonment of the premises referred to in the above quoted clause of the act of donation would necessarily follow as a result of the sale of the property to the defendant.

The position assumed by Glassell, the defendant in this case, is similar to the position assumed by Emery, the defendant in the case of Sisters of Charity v. Emery, 144 La. 614, 81 So. 99. In that case the Court compelled Emery to accept title under conditions almost parallel to the conditions prevailing in this case. Emery contended that the title tendered him was unmerchantable because of the ambiguity in the designation of the donee, but this Court, applying the provisions of Articles 1714 and 1715 of the Civil Code, admitted extrinsic evidence to establish the identity of the donee. The Sisters of Charity, the religious order which was identified by the extrinsic evidence as the donee in the Emery case, were required to use the donated property for a hospital to care for sick and afflicted persons in the City of Shreveport. Under an alternative stipulation contained in the act of donation, the

donee was granted the right to sell the property on condition that the proceeds of the sale should be paid to a designated trustee and to be only reinvested in the erection of another sanitarium, bearing the same name, in the City of Shreveport, and that the designated trustee should concur in the sale and receive and hold the purchase price until its reinvestment.

The property was mortgaged by the Sisters of Charity and the money obtained under the mortgage was used by them to purchase a larger tract of land in a more quiet and suitable neighborhood in Shreveport and to build thereon a four-story brick structure. This new sanitarium was given the same name as the old sanitarium, which was a wooden or frame structure. Shortly after the erection of the new building, the old building was destroyed by fire and the Sisters then sought to sell the old site for the purpose of applying the proceeds of the sale to the reduction of the debt incurred in building the new sanitarium. They showed that in doing so they were substantially complying with the real purpose for which the donation was originally made, although the designated trustee was dead and it was impossible for the donee to carry out all the conditions imposed by the act of donation. This Court compelled the defendant, Emery, to accept the title to the property on the theory that the purpose of the donor was to dedicate the property donated, or its proceeds, to a certain definite charitable purpose and that, as the Sisters were substantially complying with that purpose, they were authorized to convey to Emery a valid title to the property.

The evidence in this case shows that the property was donated by the Benevolent Association of the Roman Catholic Ladies to the Congregation of the Sisters of St. Joseph to be used by the donee as an orphan asylum. As far back as the year 1879, the donor was no longer functioning as an association, as most of its members had died or removed from the city. This fact is emphasized by the text of the resolution adopted by the donor on October 16, 1879, which recites as the reason for donating the property to the Sisters of St. Joseph that its members present were "convinced of the impossibility * * * to fulfill in a profitable manner for the orphans, the end of our association." The resolution further declared that the Sisters of St. Joseph had kept the orphan asylum "for the last eleven years, to the satisfaction of all."

The uncontradicted testimony offered by plaintiff makes it clear that the present site of the orphanage, which is in the heart of the business district of the City of Baton Rouge and subject to the noise and traffic incident to its location, is no longer a place where it is safe or desirable to rear and take care of young children. The impelling motive of the Roman Catholic Ladies in making the donation as set forth in the resolution was that they were convinced of the "impossibility of providing in a suitable and proper manner for the maintenance and education of said Orphans."

As shown by the testimony of their Mother Superior, the Sisters of St. Joseph have become convinced of the impossibility

of providing, in a suitable and proper manner, for the education and maintenance of the orphans committed to their charge at the place where they are now operating their asylum. In these circumstances for the Sisters to continue to operate their orphanage at its present site will not fulfill the spirit of the donation, but, on the contrary, will tend to defeat it. In order to provide for the orphans in their charge in a suitable and proper manner, the Sisters of St. Joseph have purchased a tract of land containing fifteen acres in the metropolitan area of the City of Baton Rouge, and they have made plans for the building of an orphan asylum on their newly acquired site at a cost of $400,000, or twice the amount they will receive from the sale of their property to the defendant. The only way in which the purpose of the donation, which is the continued operation of an orphan asylum, can be carried out and the donated property can be used to effectuate that purpose in another locality, is by its sale and the use of the funds derived from the sale to erect an orphanage on the new site. The fact that the Sisters' motive in selling the property to the defendant is solely for the purpose of obtaining the necessary funds to place the orphanage they are now operating in a new location which is more suitable for the rearing of young children is shown not only by the oral testimony in the record, but also by the resolution of the board of directors of the plaintiff corporation adopted at its meeting held on May 29, 1944. This resolution set forth the unsuitability of the location where the present orphanage is being located; that the new

site is better suited and adapted to the carrying out of the purposes and intentions of the donors of the old site; that the act of donation grants the donee the right to transfer the asylum to another locality; that with the transfer of the activities of the corporation from the old site to the new site there will be no necessity for the corporation to retain the ownership of the old site; and that the proceeds of the old site are to be applied, dedicated and used by the corporation for the improvement, maintenance and operation of the orphanage at the new site.

Under the contract with Glassell, the Sisters of St. Joseph are allowed twelve months after the execution of the act of sale within which to build their new orphanage before moving from the old orphanage so that there can never be any period of time within which the Sisters will not be caring for the orphans in their charge.

One of the conditions of the donation is that the Sisters of St. Joseph shall always maintain the asylum and provide for the orphans of East Baton Rouge. If they sell the property which they are presently using as an orphanage and with the proceeds erect a building on a more suitable site, thereby enabling them to more properly care for the orphans in their charge, they will still be maintaining the asylum and providing for those orphans. It must have been forseen by the parties to the act of donation that at some future time such a change would become necessary. Their understanding in this respect is embodied in this clause of the act of donation: "It

being well understood and agreed that in the event the said Religious of St. Joseph should think proper to transfer to another locality, in said Town of Baton Rouge, the said Asylum, they will have the right to do the same."

The only clause in the act of donation, which may suggest that a revocation or return to the donor may have been in the contemplation of the parties is the clause which follows the one which we have just quoted granting the donee the absolute right to transfer to another locality, and which provides that "in case they should abandon said premises," they shall be reimbursed for their improvements.

It is clear that the right to transfer to another locality granted the donee is wholly inconsistent with any right to revoke the donation because of such transfer. In fact there is a manifest distinction between the terms "abandon" and "transfer to another locality" as used in the act of donation. No one, we think, could be heard to successfully contend that the sale of the donated property, in order to enable the donee to transfer its orphanage to another and more suitable locality and the dedication for that purpose of the funds received from the sale would amount to an abandonment of the property.

■ The new site to which the plaintiff corporation proposes to transfer its orphanage, while not technically within the corporate limits of the City of Baton Rouge, is, nevertheless, well within the metropolitan area of that City, which is the area the parties to the act of donation obviously contemplated should be served. In this connection, it may be observed that although Baton Rouge at the time the act of donation was executed was incorporated as a city, and it is so designated in the instrument itself, the clause granting the donee the right to transfer to another locality does not confine the locality to the City of Baton Rouge, but restricts it only to the Town of Baton Rouge, and there are many decisions holding that a reference to a "town" does not necessarily mean an incorporated municipality, but it may mean also a community or a collective body of inhabitants. Some of these cases, excerpts from which, will be found in Words and Phrases, Perm. Ed., vol. 42, page 124, are the following: City of Denver v. Coulehan, 20 Colo. 471, 39 P. 425, 27 L.R.A. 751; Wilder v. McConnell, 91 Tex. 600, 45 S.W. 145; Russell v. Dyer, 40 N.H. 173.

■ There are also a number of decisions holding that the term "city" may not necessarily refer to the area embraced within the technical limits of an incorporated city, but may, like the word "town," refer to the city in fact. See in this connection, City of Wichita v. Burleigh, 36 Kan. 34, 12 P. 332, and In re Washington Monument Fund, 154 Pa. 621, 26 A. 647, 20 L.R.A. 323.

And there are other decisions which are persuasive in reaching a conclusion as to whether the boundary line of the corporate limits of Baton Rouge is determinative of the title in dispute, where all substantial elements seem to require the validation of

the title. Thus in the case of the Old Ladies' Home of Muscatine v. Hoffman, 117 Iowa 716, 89 N.W. 1066, the testatrix left a will directing that the proceeds of the sale of her property should be given to an orphan asylum in a certain city. The court held that an orphan asylum outside the corporate limits could take under the will, since the will was not to be understood as to refer to the geographical lines of the city. And in the case of Rogers v. Galloway Female College, 64 Ark. 627, 44 S.W. 454, 39 L.R.A. 636, the court held that a subscriber was liable on his subscription to a college which was to be located at a certain town, although the college was actually located outside the corporate limits but within its settled area. The court stated that the contract was not to be construed as denoting only a place conceived of as the same geographical town, but that the substance of the transaction should be looked into in determining its character.

The donor corporation ceased to function in any manner after the act of donation was executed in plaintiff's favor. Under the provisions of its charter, in the event of its dissolution, no portion of the donor's property could pass to any of its members or their heirs. The property was dedicated by the charter to charitable uses and could be employed or disposed of only for such uses. It was for the purpose of carrying out these charter purposes that the donation in question was made.

It appears to be well established by the record that all the incorporators and members of the donor corporation have died

and that the corporation has therefore lost its right to operate as such.

In view of the fact that the property involved in this suit was originally acquired by the Benevolent Association of the Roman Catholic Ladies for strictly charitable purposes and that it was donated to the Congregation of the Sisters of St. Joseph, the plaintiff herein, for strictly charitable purposes, and that it was to continue to be devoted to such purposes, there seems to be no good reason why this Court should not hold that no right of revocation of the donation in question now exists. Certainly if the effect of such a revocation would be to put the title to the property in unknown heirs, and thus subject to use for private purposes, it would defeat, instead of carrying out, the purpose for which the donation was made.

The property was donated to the plaintiff corporation to be used by it as an orphan asylum. The donation, however, expressly authorized the donee to remove its asylum to any other locality within the area of the community which the parties contemplated was to be served. No construction of the terms of the donation can negative the fact that the continued operation of an orphan asylum and not the continued use of the property for such an asylum by the donee was what the donors desired and contemplated in executing the donation. The only way that the purpose for which the donation was made—the operation of an orphan asylum—can be carried out and the property used to carry it out in another locality is by the sale

of the property and the use of the proceeds of the sale to construct a new asylum in the new locality. If the court were to hold that the property could not be sold for that purpose, it would be reading into the act of donation a condition of inalienability, which the court has no power to do. Nor has the court the power to read into the act of donation a condition of reversion which the donor did not place therein in the event the property should not be used as the site of an orphan asylum.

Our conclusion is that, under the extrinsic evidence offered in this case, and in view of the length of time that has elapsed since the donation under review here was executed, the donation can not be revoked because its revocation would defeat the manifest purpose of the donor in executing the instrument; and that the use of the proceeds of the sale of the donated property to pay a part of the cost of constructing the new orphanage at a more suitable location is a substantial compliance with the terms of the donation and can not, in any circumstance, be considered as an abandonment of the donated property, as contemplated by the parties to the instrument. From which it follows that, in our opinion, the Congregation of the Sisters of St. Joseph, the plaintiff herein, is vested with a valid title to the donated property, which it is authorized to convey to the defendant.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., does not take part.

HAMITER, J., concurs in the decree.