## SUCCESSION OF THORAME—Opposition of MYLNE ASYLUM, appellant.

*In interpreting a will, the intention of the testator must be ascertained as far as practicable, and regard will be had to all the facts and circumstances under which the will was made.*

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *J. & E. Bermudez*, for Mylne Asylum, appellant. *H. Griffon*, for the executors. *J. & A. Pitot* and *A. Roberts*, for St. Mary's Catholic Orphan Asylum.

BUCHANAN, J. *Jean Pierre Thorame*, by his will made in Paris, and duly admitted to probate and execution in New Orleans, devised and bequeathed one-third of the net total of his estate to the asylum for male orphans established in the Third District of the city of New Orleans.

There are two charitable corporations answering the description of this clause of the will of *Thorame*, both being located or established within the corporate limits of the Third District of New Orleans. Each of these institutions claims, to the exclusion of the other, to have the benefit of this legacy.

The corporate appellation of one of these claimants is "The Mylne Asylum for Destitute Orphan Boys."

That of the other is "The St. Mary's Catholic Orphan Boys Asylum."

In interpreting this will, our first duty is to ascertain, as far as practicable, the intention of the testator. C. C. 1705.

And in the outset of this investigation we are satisfied that the intention of *Thorame* was to make *one* orphan asylum, and no more, the object of his bounty; the singular number of the substantives "hospice" and "asyle" being the grammatical form of an olographic will, whose every sentence bespeaks its author to have been a man of education and of high intelligence. The clause of the will which is the subject of consideration, is, indeed, a model of diction as well as of sentiment; a noble thought finely expressed. It reads as follows:

"Je donne et légue le tiers du total net de ma succession à l'hospice ou asyle des orphelins dont l'institution est établie dans le Troisième District de la Nouvelle-Orléans, en témoignage de ma reconnaissance pour la terre hospitalière qui, après l'année 1815, dont les événements politiques d'Europe avaient brisé une carrière pleine d'espérances, est venue m'offrir les moyens d'en créer une nouvelle et d'acquérir honorablement les biens que je laisse après moi."

It is apparent that the testator had a particular asylum in view. The District Judge concluded from the evidence that the contemplated object of the testator's charity was the St. Mary's Catholic Orphan Boys' Asylum, and we think the balance of probabilities preponderates strongly in favor of that interpretation.

The testator was a resident of New Orleans from the year 1817 to the year 1835 or 1836. Having amassed a competency by the industrious exercise of an honorable profession, he left this city in 1835 or 1836, and spent the remain-

der of his days in Paris, where he died on the 7th June, 1856. But, although
*Mr. Thorame* was thus absent in person, yet his relations with this country
and with the city of New Orleans were intimate and continuous to the end of
his existence.

He describes himself in his will as a naturalized citizen of the United States,
and makes particular mention of the day of his naturalization and of the court
in which he was naturalized. His fortune remained, to the day of his death,
invested in real estate, bank stock and mortgages in the city of New Orleans,
administered by agents with whom we must presume he was in constant cor-
respondence, and besides whom we find mentioned in the will and in the testi-
mony on trial the names of many respectable citizens of New Orleans, with
whom the testator was on terms of intimacy.

It is thus perceived that *Mr. Thorame* had abundant opportunities of being
well informed in relation to the charitable institutions existing in the Third
District of the city of New Orleans at the time of making his will, which was
the 15th October, 1854, nearly two years previous to his death.

We are next to enquire to which of the two institutions which claim to be the
object of this charity, it is most likely, from the evidence, that *Mr. Thorame's*
attention should have been directed, either by personal observation during his
sojourn in New Orleans, or by his correspondents, after his departure ?

The Mylne Asylum for Destitute Orphan Boys certainly came into existence
after *Thorame's* departure from Louisiana. It was founded by the last will of
*Alexander Mylne*, whose succession was opened in October, 1838, and was in-
corporated by Act of the Legislature of February, 1839. This asylum is proved
to have been first opened in June, 1839. It was discontinued a short time
afterwards, and remained closed until the 15th August, 1854, when it was re-
opened, and from that time to the present, it has supported about thirty orphans
at a time. This asylum was richly endowed by the will of its founder, and is
now in the possession of property estimated at $24,000.

The St. Mary's Catholic Male Orphan Asylum was incorporated by the Legis-
lature of this State in March, 1836, under a different name, and may therefore
have been in existence previous to *Thorame's* departure from Louisiana. It
was founded by an association of charitable persons, has been in active opera-
tion from the date of its incorporation, without intermission, and has always
depended solely upon contributions of its corporators and upon collections
made for its benefit at religous ceremonies and elsewhere. It has also received
assistance from the city, and is the institution to which the Mayor, as dispenser
of the municipal charity, has been in the habit for many years of sending des-
titute male orphans for shelter and sustenance. With means thus derived en-
tirely from voluntary contributions, and under the superintendence of an aged
and respectable citizen, *Mr. Anthony Rasch*, who has for many years devoted
himself to this work, this institution shelters and supports upwards of two
hundred male orphans of all ages, from the earliest infancy to fourteen years.

Established at first on the Bayou St. John, within the Second District of this
city, the St. Mary's Catholic Boys' Asylum was removed in April, 1840, to the
Third District, where it has ever since remained.

With these facts before us, we cannot doubt that the St. Mary's Asylum was
that which was intended by the testator. In point of fact, the Mylne Asylum
had no actual existence for the purposes of its foundation until within precisely
two months of the period when *Thorame* penned his will on the other side of

the Atlantic; and the insignificant scale of its operations, compared with those of its rival, at the end of the two years of its existence, (when the witnesses testified in this cause,) renders it more than improbable that it could have acquired a notoriety, at the end of the two months, which would have procured for it from *Mr. Thorame* the title of *the* asylum for male orphans established in the Third District.

Judgment affirmed, with costs.