friends detected them, appears highly improbable.

The substance of the testimony of plaintiff and his three witnesses is that, on April 5, 6, 7, 8 and 9, 1956, between the hours of 8:30 and 10:00 p. m., they saw a man, who wore khaki pants and a red baseball cap, walk into the front yard and down an alley alongside the residence to the rear of the house, where he entered. They declared that, shortly thereafter, they proceeded along the alley until they arrived beneath the window of defendant's bedroom, where they "boosted each other up" to an elevation where they peeked through the open window and witnessed defendant in bed with this man.  Each one of the four participants in this peeping expedition declares that he saw defendant in bed with the man (some of them say that they were naked) when he was elevated to the window by the others.  They further state that their view was made possible by the reflection of the kitchen light into defendant's bedroom, this being the only light burning in the house at the time.

It is of course the rule, as stated in the majority opinion, that this court will not disturb the finding of a trial judge on facts unless manifestly erroneous.  For my part, I believe that the trial judge erred in holding that plaintiff's testimony preponderated over that of defendant and her witnesses.

I respectfully dissent.

110 So.2d 95

Succession of Charles BLAUM.

No. 43778.

March 23, 1959.

Harry P. Gamble, Jr., Lautenschlaeger & Gamble, Harry P. Gamble, Sr., New Orleans, for opponents-appellants.

1. No bequest of the residuary estate was made to his sister Mrs. Caroline Blaum Schiefenhovel. There is a stipulation in the record that at the time the will was

Felicien Y. Lozes, New Orleans, for executor-appellee.

HAWTHORNE, Justice.

Charles Blaum died in March of 1956 leaving no ascendants or descendants. He was survived by two brothers, Frank Blaum and Louis Blaum; two sisters, Mrs. Annie Blaum Frantz and Mrs. Caroline Blaum Schiefenhovel; a nephew and a niece, George T. Foerster and Mrs. Catherine Foerster Keneker, children of a deceased sister, Mrs. Clara Blaum Foerster; four nephews and a niece, Valentine A. Blaum, August J. Blaum, Jr., Alvin G. Blaum, Harold S. Blaum, and Mrs. Bertha Blaum Winstell, children of a deceased brother, August J. Blaum. In short, he was survived by two brothers, two sisters, the two children of a predeceased sister, and the five children of a predeceased brother.

Charles Blaum left a last will and testament in nuncupative form by public act. This will provides for numerous particular legacies and then provides: " * * * and the balance of my estate to be divided equally between my brothers Frank B. Blaum Louis Blaum and my sister Mrs. Annie Frantz, and the children of my deceased brother, August Blaum, and the children of my deceased sister Mrs. Clara Foerster."[1]

This will was ordered registered and executed, and the executor named in the will

written the testator knew this sister had been confined to an insane asylum for the last eight years, and that she was still living and still in the asylum.

qualified. In due course the executor filed his final account and proposed tableau of distribution showing that the balance of the estate amounted to more than $42,000.00. In the tableau the executor proposed to distribute this balance in five equal parts—$\frac{1}{5}$ each to the brothers Frank and Louis Blaum; $\frac{1}{5}$ to the sister Mrs. Annie Frantz; $\frac{1}{5}$ (or $\frac{1}{10}$ each) to the two children of the deceased sister Mrs. Clara Foerster, and $\frac{1}{5}$ (or $\frac{1}{25}$ each) to the five children of the deceased brother August J. Blaum.

Opposition to this distribution was filed by the five children of the deceased brother August J. Blaum. They contended that under the above quoted clause of the will the balance of the estate should be divided into 10 equal parts and distributed $\frac{1}{10}$ each to the two brothers, the sister, and the seven nephews and nieces. If this opposition were sustained, the two brothers and the sister would receive $\frac{1}{10}$ each instead of $\frac{1}{5}$, the two Foerster children would still receive $\frac{1}{10}$ each, and the five opponents would receive $\frac{1}{10}$ each instead of $\frac{1}{25}$.

The lower court dismissed the opposition and ordered the final account and tableau of distribution approved and homologated and the funds distributed in accordance therewith. From this judgment the opponents have appealed.

The controversy before the court involves only an interpretation of the clause of the will which we have quoted above.

Under the executor's interpretation the division of the residuum of the estate would be made by roots into five equal parts. Under the opponents' theory the division would be by heads into 10 equal parts, for they contend that it was the intention of the testator that each of the nephews and nieces should receive the same amount from the residuum of his estate as each of his surviving brothers and his sister.

Under Article 1712 of the Civil Code it is a cardinal rule for the interpretation of wills that " * * * the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament".

The controversial clause in the will which we are called upon to interpret does not seem to us ambiguous, and we are convinced that the testator's intention can be ascertained without departing from the terms of the testament. It provides that the balance of the testator's estate is to be divided equally between two named brothers, a named sister, the unnamed children of a named predeceased brother, and the unnamed children of a named predeceased sister. The fact that the brothers and the sister are named and the children of the deceased brother and sister are not named is very significant to us, and shows clearly that the testator intended to treat the unnamed children of his deceased brother and sister as two classes or groups and not as individual

persons. This view is further borne out by the fact that the testator used the names of *five* persons, all of whom were his brothers and sisters, in framing the bequest. Thus it is clear that the testator intended the equal division of the residuum of his estate to be made by roots and not by heads.

■ This was our first impression on reading the will and as such is entitled to weight. Under the jurisprudence of this state, "In the interpretation of wills, the first and natural impression conveyed to the mind on reading the clause involved is entitled to great weight. The testator is not supposed to be propounding riddles, but rather to be trying to convey his idea in the simplest manner so as to be correctly understood at first view". Succession of Le Barre, 179 La. 45, 153 So. 15, 16.

In the case of Burthe v. Denis, 31 La. Ann. 568, decided in 1879, this court had occasion to discuss some of the fundamental rules for the interpretation of wills pertinent to the decision of that case. First, the intention of the testator should be sought, and this should be deduced primarily, if possible, from the will itself without resort to extrinsic circumstances. Second, if from the terms of the will the intention of the testator cannot be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention. Both of these rules are provided by the articles of our Code. See C.C. Arts. 1712, 1715. The court then pointed out that there is a *third important rule*, that is: " * * * in case of doubt, that interpretation should be preferred which will *approximate closest to the legal order of distribution*. This rule flows from the general principle that the law favors the distribution which it itself provides, and gives effect to the will of man only when that will is clearly expressed or fairly deducible." (Italics ours.) In support of this third important rule the court in the Burthe case quoted from a number of cases, saying in part:

"In Lyon vs. Acker, 33 Connect. [222], p. 229, the court says: 'It is a sound rule when a devise or legacy is given to heirs or their representatives for courts to apply the general principles governing the descent of estates, unless a contrary intention appears. The statute of distribution governs in all cases where there is no will; and where there is one, and the testator's intention is in doubt, the statute is a safe guide.'

"In Minter's appeal, 4 Wright Pa. 111, the court says: 'When we find a man distributing his estate in whole or in part among his next of kin, and he leaves the proportions in which they are to take in doubt, it is quite natural for us to suppose that he had that statutory or customary form of distribution in his mind, and to interpret his will accordingly.' "

See also Succession of Stewart, 51 La. Ann. 1553, 26 So. 460; Succession of Williams, 132 La. 865, 61 So. 852; Succession of Montegut, 217 La. 1023, 47 So.2d 898.

We are convinced that we have found the intention of the testator in the instant case without departing from the terms of the testament. If, however, we should concede that the testator's intention cannot be ascertained from the will itself, we would then avail ourselves of the other two rules for interpretation of testaments set out in Burthe v. Denis, supra.

The only extrinsic evidence in this case is found in a stipulation that the testator had another sister whom he did not name in his will, who was living and confined to an insane asylum. We do not find this extrinsic circumstance of any aid in determining whether the testator intended that the division of his property should be made by roots or by heads.

We pass on, then, to the third rule announced above, that the interpretation should be preferred which will approximate closest to the legal order of distribution. Under this rule we would arrive at the same interpretation as we did originally from the terms of the will—that the testator intended the residuum of his property to be divided by roots and not by heads.

Opponents rely on Succession of Untereiner, 151 La. 804, 92 So. 343, to strength-

en their argument that this estate should be equally divided between the two brothers and one sister of the testator and his seven nieces and nephews. In Untereiner the residual legacy read: " * * * the balance of my estate I give to all of my children and the children of my deceased son in equal portion." This court said in dicta that the testatrix "obviously intended that the grandchildren should each receive an equal portion, or that they each should share and share alike with her children * * *. We hardly think the language susceptible of any other interpretation. A bequest to seven persons in equal proportion can only mean that they are to receive share and share alike." All the court did in Untereiner was to give a natural interpretation to the pertinent part of the will involved in that case. The wording of the residual legacy in the instant case is entirely different. Two significant things about the Untereiner legacy are that neither the testatrix' children nor those of her dead son are specifically named, and that *"in equal portion"* follows the words *"my children and the children of my deceased son"*. In the instant case, however, *"to be divided equally between"* precedes the legatees, and although the testator's brothers and sisters, living and dead, are specifically named, the children are not, being simply referred to as *"the children of my deceased brother, August Blaum, and the children of my deceased sister, Mrs. Clara Foerster"*.

Opponents further strenuously argue that the controversial clause here was a bequest to 10 individuals—two brothers, one sister, and seven nephews and nieces—, and that under the provisions of the will it is clear, because of the phrase "divided equally between", that it was the intention of the testator to bequeath 1/10 to each person who would benefit under this residual legacy. In support of this contention they cite a great many cases from other jurisdictions to the effect that the words "equally divided" when used in a will are generally construed to mean a division per capita, or by heads. There is no doubt that the authorities cited by opponents support their view. However, according to American Law Reports the decisions on the question of when beneficiaries under a will are to take per capita (by heads) and when per stirpes (by roots) are in hopeless conflict. See 16 A.L.R. 15–152 (1922); 13 A.L.R.2d 1023–1080 (1950). In 13 A.L.R.2d 1023, 1035, it is stated:

"Generally, the expression 'share and share alike' in a will indicates a per capita distribution, it being expressive of an intention upon the part of a testator that the devisees shall take equal shares regardless of consanguinity.

\*       \*       \*       \*       \*       \*

"However, there is authority among the later cases, as among the earlier ones, that such expressions as 'share and share alike,' or 'equally,' do not necessarily require an equal division among all the beneficiaries, and that a per stirpes distribution may be made, notwithstanding the use of such an expression, particularly where such beneficiaries are in unequal degrees of relationship, the view frequently being that the direction as to equality was intended to mean equality within the particular groups."

In Thompson on Wills, 480, sec. 318 (3d ed. 1947), the following pertinent language is found:

"While it is said that the words 'equally divided' can mean nothing except per capita, there are numerous cases to the effect that such expressions of equality do not necessarily require a per capita division, but are applicable just as readily and appropriately to a per stirpes division where there is more than one group or class. Such words have been frequently interpreted as indicating an intention of the testator to make a distribution per stirpes and not per capita. Words importing a per capita division may be controlled by the context so as to necessitate a per stirpes division. Thus where a will gave property to the testator's children by name and the children of a deceased named child without naming them, 'share and share alike,' it was held that the grandchildren were entitled to share per stirpes."

It is thus apparent that the phrase "to be divided equally" does not necessarily or in all cases import a division by heads, and that in each will containing such a phrase the words must be interpreted in their own particular context. Our interpretation of the residual legacy here under consideration is that it provides for a division by roots.

The judgment appealed from is affirmed.