LANDRY, Judge.
Elphedge Joseph Scioneaux, Jr. (Appellant), appeals from judgment sustaining an exception of no right of action filed by Alfred J. Loup, Jr., Executor of the estate of Marie Scioneaux Baskin (Testatrix), in opposition to Appellant’s petition for recognition as an alleged legatee of Testatrix. The question presented is one of identity, namely, whether Appellant is the “E. J. Scioneaux” named in Testatrix’s will. The trial court held he was not. We affirm.
The salient issues are: (1) Where doubt exists as to which of two persons is the intended legatee, may evidence be received for any other purpose than establishment of the identity of the intended legatee; (2) Alleged trial court error in allowing an omission in the will to negate a positive assertion therein; and (3) Whether the trial court erred in not following the first and natural impression rule applicable to testamentary interpretation.
Testatrix died September 29, 1975, leaving no forced heirs. Her statutory will, dated August 23, 1966, was duly probated and her above named Testamentary Executor (Executor) confirmed. The testament pertinently provides:
“I will and bequeath all of my stock in Roselawn Development Association, Inc.; all of my stock in Investors Mutual, Inc.; all of my stock, whether full paid or optional share accounts, in Home Savings & Loan Association and in Citizens Savings & Loan Association; all of my accounts, whether savings or checking, in the American Bank & Trust Company of Baton Rouge and the Fidelity National Bank of Baton Rouge, of which I die possessed to the Fidelity National Bank of Baton Rouge, Baton Rouge, Louisiana, as Trustee, in trust for the following persons in the proportions herein set forth, to wit:
*933 One-fifth (Vfc) to Edna S. Loup, Sr.
One-fifth (Vfc) to E. J. Seioneaux
One-tenth (Vio) to Corinne S. Levy
One-tenth (Vio) to Gladys S. Hunt
One-tenth (Vio) to Beatrice S. Schaeffer
One-tenth (lAo) to Effie S. Savignole
One-tenth (Vio) to Alfred Seioneaux
One-tenth (Vto) to Clifton Seioneaux
I do not intend this to be a conjoint legacy.”
Additionally, special bequests were made to a number of legatees, among them:
“29) E. J. Seioneaux
My personal automobile
* * * * * *
42) I bequeath to E. J. Seioneaux my Shell Oil Company royalty interest.
* * * * * *
47) The remainder of my estate not herein disposed of, I leave to those of the following named persons who are living at the time of my death:
Edna Loup Effie Savignole
Edna Hunt Beatrice Schaeffer
Corinne Levy E. J. Seioneaux”
The controversy over the E. J. Seioneaux named in Testatrix’s will arose because Testatrix’s brother, E. J. Seioneaux died June 25, 1962, (prior to the date of the will), leaving as his sole descendant, E. J. Scion-eaux, Jr., an adopted child. Appellant’s rule to show cause why he should not be recognized as the legatee was opposed by Executor on the ground that Appellant was not the E. J. Seioneaux named in the will, but is the adopted child of the intended legatee. After receiving parol and other evidence on the identity issue, the trial court found that Testatrix intended her brother, E. J. Seioneaux, not appellant, to be the intended legatee and that the legacy had lapsed due to the death of the intended legatee.
The following codal provisions are germane:
LSA-C.C. Article 1697:
“The testamentary disposition becomes without effect, if the person instituted or the legatee does not survive the testator.”
LSA-C.C. Article 1712:
“In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.”
LSA-C.C. Article 1714:
“In case of ambiguity or obscurity in the description of the legatee, as, for instance, when a legacy is bequeathed to one of two individuals bearing the same name, the inquiry shall be which of the two was upon terms of the most intimate intercourse or connection with the testator, and to him shall the legacy be decreed.”
LSA-C.C. Article 1715:
“When, from the terms made use of by the testator, his intention cannot be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.”
Relying on Article 1714, above, Appellant contends he is the intended legatee because Testatrix was aware (as the record conclusively establishes) that her brother died pri- or to the signing of Testatrix’s will. Additionally, Appellant and his mother testified that Testatrix always referred to her brother as “Elphedge” and Appellant as “E. J.”. Appellant also testified he was very close to Testatrix during his childhood. He also testified he left Louisiana about nine years before Testatrix’s death and that Testatrix contacted him frequently by telephone and sent him money on occasion. He conceded he saw decedent last in either 1969 or 1970.
Roland Kizer, Attorney-at-law, testifying on behalf of Executor, stated he advised Testatrix in the drafting and execution of her will. Over Appellant’s objection, Mr. Kizer stated he had been a close friend of Testatrix and her husband for many years. Testatrix’s predeceased husband owned stock in Roselawn Memorial Cemetery, Baton Rouge, of which concern Mr. Baskin was manager. After Mr. Baskin’s death in 1953, the Board of Directors of the cemetery association attempted to persuade Testatrix to donate or sell her husband’s cerne- *934 tery stock to the cemetery’s perpetual care fund to protect the fund. Testatrix, however, wished to leave the stock to her full brother Elphedge Joseph Scioneaux, her full sister Edna S. Loup, Sr., and her half sisters and brothers Corinne S. Levy, Gladys S. Hunt, Beatrice S. Schaeffer, Effie S. Savignole, Alfred Scioneaux and Clifton Scioneaux. Testatrix told Kizer she wanted them “to have everything we worked hard for all our lives”. Accordingly on Kizer’s advice, Testatrix decided to leave her cemetery stock to her siblings in trust. Testatrix expressed concern as to the legal effect of one such legatee predeceasing her. Kizer advised that to avoid a portion of the stock falling to the heirs of a predeceased legatee, the legacies would be declared non-conjoint so that the share of a predeceased legatee would lapse and go to those siblings Testatrix had indicated she wished to be her residuary legatees. The first portion of the will, the whole of which comprises five typewritten pages, was prepared by Kizer between 1954 and 1956. Testatrix came frequently to Kizer’s office, indicating changes she wished to make in the proposed testament. Kizer informed Testatrix he would prepare the will only once and Testatrix had to make up her mind what she wished to do. Eventually, in 1966, Testatrix informed Kizer she was going to Europe and wished to execute her will with some changes. Kizer again informed Testatrix he would write the will once only. Decedent replied:
“Well, we won’t do anything now. I’ll just sign the will. And when I get back from Europe, if I live, then if I want to make any changes, I’ll make it. In the meantime, I want that will just exactly like you got it and I want you to do it.”
Kizer was not aware of E. J. Scioneaux’s death until the time the will was actually executed. He also stated he never heard of E. J. Scioneaux, Jr. until this litigation arose. In rebuttal, however, Appellant produced testimony to the effect that Testatrix, accompanied by E. J. Scioneaux’s widow, called on Kizer and requested his recommendation of an attorney to handle Mr. Scioneaux’s estate. Mr. Kizer could not recall such a visit.
Executor testified that upon Testatrix’s return from Europe, she requested that he assist her in making some changes on a carbon copy of her will which she had in her possession. In his presence, Testatrix made an “x” mark next to the name E. J. Scion-eaux appearing in the will, explaining that she did so because that person was deceased. Testatrix also requested him to write on the will copy certain changes she wished to make but could not do so because her hands were so shaky she could not write well. Loup added that he knew E. J. Scion-eaux, Jr., and had heard Testatrix refer to him as a “no good boy”.
Other witnesses produced on behalf of Executor testified in essence that Testatrix was unhappy with her nephew, E. J. Scion-eaux, Jr. They also stated that Testatrix placed long distance calls to Appellant to request that he get in touch with his mother whom Testatrix felt he was neglecting.
Appellant suggests that because Testatrix knew her brother was dead at the time Testatrix signed her will, and because Appellant was the only living person named E. J. Scioneaux when the will was signed, the omission of “Jr.” from the name of the legatee is a matter of no moment. He adds that since his father’s death he signs his name frequently without adding “Jr.” thereto.
Such an omission may not be assumed especially where, as here, the same legacy names a co-legatee designated as “Edna S. Loup, Sr.”. Carter v. Succession of Carter, 332 So.2d 439 (La.1976). It appears that Testatrix was aware of the identities of intended legatees insofar as concerns Jrs. and Srs. Had she intended E. J. Scioneaux, Jr., to be the legatee, she would have indicated so by adding the “Jr.”. In addition, the record indicates that Appellant did affix “Jr.” to his signature after his father’s demise. In this regard, Appellant’s mother testified that E. J. Scioneaux was sometimes referred to as Senior; she did not know if he ever signed his name as such.
The primary rule of testamentary interpretation is that courts must endeavor *935 to ascertain the testator’s intention. All other rules of interpretation are merely tools or means to accomplish the principal goal. Succession of Carter, above, and authorities cited therein.
When identity of a legatee is doubtful, courts may resort to extrinsic evidence to identify the intended heir. Where two or more persons bear the same name as a legatee, identity may be established by determining which of the two was most intimate with the testator. In case of doubt, recourse may be had to all circumstances which may aid in discovering testator’s true intent. LSA-C.C. Articles 1714, 1715; Burthe v. Denis, 31 La.Ann. 568 (1879); Succession of Pugh, 129 La. 415, 56 So. 352 (1911); Sisters of Charity of Incarnate Word v. Emery, 144 La. 614, 81 So. 99 (1919); Succession of Blaum, 236 La. 1046, 110 So.2d 95 (1959).
Appellant contends it would be illogical to hold that Testatrix knowingly intended to make her predeceased brother legatee, therefore the only reasonable interpretation of the will is that she intended Appellant as legatee. This argument ignores the attending circumstances. The record reflects that a substantial portion of the ill was drafted prior to the demise of Testatrix’s brother, E. J. Scioneaux. As previously noted, Testatrix consulted Mr. Kizer on numerous occasions concerning changes she wished to make in the draft of the will before she ultimately executed the instrument. It also appears that rather than leave intestate, on a trip to Europe, she signed the will as it existed before her departure. At this time, she knew her intended beneficiary E. J. Scioneaux was deceased, but believed this circumstance was a matter of no concern because, under the will she signed the lapsed legacy would revert to her residuary legatees according to her wishes.
We find the trial court ruled correctly in holding that the identity of the E. J. Scioneaux named in the will could not be determined from the instrument itself. No person bearing the precise name E. J. Scion-eaux existed. The party claiming to be legatee was E. J. Scioneaux, Jr. The question then became whether Testatrix intended E. J. Scioneaux, Jr. to be the E. J. Scioneaux she named. As regards the issue of closeness, the record reflects that Testatrix was much closer to her brother than her nephew. Under the circumstances, admission of evidence regarding the circumstances attending preparation and confection of the will was proper. LSA-C.C. Article 1715; Succession of Rusha, 158 La. 74, 103 So. 515 (1925); Succession of Thorame, 12 La.Ann. 384 (1857); Planiol et Ripert, Traité pratique de droit civil frangais V (1933) No. 171, p. 176 and No. 597, p. 627; Josserand, Cours de droit civil positif frangais, III (2 éd. 1933) No. 1522, p. 866.
As contended by Appellant, the first and natural impression conveyed by a testament’s terms is entitled to great weight. Garter v. Succession of Carter, above; Succession of Bobb, 41 La.Ann. 247, 5 So. 757 (1889). In applying the rule, the jurisprudence establishes that great weight should be accorded the first and natural impression obtained from reading the will as a whole. A testator is deemed not to be posing riddles, but rather conveying his intention to the best of his ability as to be understood at first view. Succession of Carter, above. The question here is who is E. J. Scioneaux? We find that a reading of the will as a whole does not convey the first and natural impression that E. J. Scioneaux, Jr. is the intended legatee.
To establish his claimed heirship, Appellant offered proof of the prior demise of his father E. J. Scioneaux. If Appellant had to resort to extrinsic evidence to establish himself as the intended legatee, we deem it elementary that Executor should have the privilege of rebuttal.
Appellant’s final argument is that Testatrix intended him to be the intended legatee because she was aware of her brother’s prior death and wished to provide for Appellant considering other nieces and nephews would inherit from their parents the legacies left them. We find no merit in this argument. The intent of a testator must be determined from the will as a *936 whole, and effect must be given every part of the will so far as the law permits. Article 1712, above; Succession of Carter, above; Succession of La Barre, 179 La. 45, 153 So. 15 (1934). In this instance, the latter part of Testatrix’s will names as residuary legatees certain siblings who may survive her. The extrinsic evidence, considered in conjunction with the will’s provisions, indicates that the legatee named was not intended to be Appellant.
The judgment is affirmed, Appellant being cast for all costs of these proceedings.
AFFIRMED.